ANNIE McKIMBLE, administratrix, vs. BOSTON AND MAINE
RAILROAD.

Suffolk.   March 11, 12. — April 2, 1886.   W. ALLEN & HOLMES, JJ.,
absent.   GARDNER, J., did not sit.

The trains of a railroad corporation were obliged by law to stop within five hundred
feet of the point where its tracks crossed those of another railroad.  At this
stopping place, the corporation maintained, upon the eastern side of its tracks,
a building and platform adapted for the use of passengers, and used by them to
enter its trains, and also by the workmen at its shops in the vicinity.  No trains
of the corporation were advertised to stop at this point; no tickets were sold,
and no fares were taken for passages to or from this point; and the name of
this stopping place was never called in the trains.  A passenger on one of the
trains left it at this place upon the westerly side of the tracks, where no
provision was made for passengers, and where it was dangerous for passengers
to alight, and was killed by a passing train on a parallel track.  *Held*, in an
action of tort against the railroad corporation for the death, that the question
of the defendant's liability was properly submitted to the jury.

TORT, by the administratrix of the estate of Jeremiah Mc-
Kimble, for causing his death, while a passenger upon the road
of the defendant corporation.  After the former decision, re-
ported 139 Mass. 542, the case was tried in the Superior Court,
before *Mason*, J., who allowed a bill of exceptions, in substance
as follows:

Jeremiah McKimble took passage on a train of the defendant
corporation, leaving Boston at five o'clock in the afternoon of
January 10, 1883.

He had in his possession a five-trip commutation ticket over
the defendant's road from Boston to Malden, which was marked,
"Not good to stop over on."   The conductor, in collecting his
fares, had not reached the seat in which McKimble sat when the
latter left the train.   The train upon which McKimble took
passage was one which did not stop at Malden, and was not
advertised to stop there.

The railroad of the defendant, as it leaves Boston, after cross-
ing Charles River, crosses Miller's River on a drawbridge, then
Austin Street in Charlestown, and approaches a grade crossing
of the Fitchburg Railroad Company.  Before passing this cross-
ing of the Fitchburg Railroad Company, the defendant, at the
time of the injury to McKimble, was obliged by law to stop its

trains within five hundred feet of the crossing. The railroad of the defendant at the point where it is thus obliged by law to stop its trains, and the adjacent neighborhood at the time of the accident, are correctly described as follows :

The territory was once covered by water, and over a part of it a pile structure has been built and a part of it has been filled. Upon the westerly side of the principal tracks of the railroad, the premises are occupied by the freight yards and shops of the company. Miller's River passes between the yards and shops, and the defendant has no right to obstruct it in any manner, except to cross it by a drawbridge. No provision of any description is made for passengers upon the westerly side, and all the territory on the westerly side, including the pile structures and the filled land, is dangerous and unsafe for passengers. Upon the eastern side of the tracks, immediately south of Austin Street and the crossing of the Fitchburg Railroad Company, are a small building, and a platform extending around it and nearly seven hundred feet southerly, by the side of the track to Miller's River. This building and platform are maintained by the defendant; and there was evidence tending to show that they are adapted for the use of passengers, and are used by passengers to enter trains of the defendant, and are also used by men employed by the defendant at its shops in the vicinity. No trains of the defendant are advertised to stop at the point, and its trains are only stopped there because so required by law. No tickets are sold to or from this point, and no fares are taken by the defendant for passages to and from this point; but, if taken from persons entering or leaving the train at this point, they are fares always to advertised stopping places beyond. The name of this stopping place is never called in the trains.

The plaintiff's intestate, as the train upon which he took passage was approaching this stopping place, left his seat, passed out of the car in which he sat, and left it and the train upon the westerly side of the tracks, where no provision had been made for passengers. He was almost immediately killed by a freight train.

The defendant requested the judge to rule that, upon the evidence, the plaintiff could not recover.

The defendant also asked the judge to instruct the jury that the plaintiff's intestate, at the time of receiving the injuries, was not a passenger, because, by voluntarily leaving the train in the manner in which he did at Charlestown, or Prison Point, as it is sometimes called, he ceased to be a passenger within the meaning of the Pub. Sts. c. 112, § 212, and was no longer entitled to the rights and protection of a passenger; that the undertaking and duty of the defendant toward him was to carry him with due care between the points designated on his ticket and at the terminal point, and only at that point to provide safe means for him to leave the premises of the company, or, at most, only at some point at which it advertised and definitely undertook to deliver passengers, and not elsewhere; that the defendant had no reason to anticipate that the plaintiff's intestate would leave the train at Charlestown, and was under no obligation to see that he had an opportunity to do so, or to provide him there with any means of leaving its trains, and was not bound to provide passengers with means of leaving its trains there, or generally at points at which it had not advertised to stop and for which it had not sold tickets; that passengers acquire no rights to leave trains of the defendant at points at which it stops its trains merely because required by law so to do, and the defendant was not bound there to provide safe egress from its trains and premises; that the defendant was not bound to prevent passengers from leaving its trains at points and at places at which it had provided no facilities for so doing and had not invited them to alight; that if the plaintiff's intestate left the train at a point at which the train was stopped merely in compliance with law, but at which it had not specifically undertaken to deliver passengers, and had no reason to anticipate that the plaintiff's intestate would leave the train, the defendant was passive in the matter, and he acquired no rights against it, and that nothing was to be presumed in his favor because others had been accustomed to enter and leave the train at this place, provided such custom was beyond the reasonable control of the defendant, and it held out no inducements thereto; that if the defendant provided facilities for its workmen to leave or enter the train at this point, it was not in consequence responsible for providing facilities for passengers there, nor for a higher duty than taking care that such

facilities as it provided were safe; and that this duty did not extend to providing such as would be suitable at regular stations.

The defendant also requested the judge to rule that there was no evidence that the plaintiff's intestate left the train by reason of any inducement held out to him by the defendant; and that there was no evidence that it had violated any duty due him.

The judge ruled that there was no evidence of any inducement held out by the defendant for the plaintiff's intestate to leave the train upon the western side; but declined to give the other rulings requested, except so far as included in the instructions stated below; and, besides other instructions adapted to the case, instructed the jury as follows:

"There is evidence in the case that would warrant a jury finding that, at one time on the evening in question, Jeremiah McKimble was a passenger upon a train of the defendant corporation. He retained that character as passenger until his receiving the injuries which resulted in his death, unless he had surrendered his right as a passenger by the manner and place of his leaving the train. If it appears that Jeremiah McKimble left that train when it was in motion, there is nothing in the evidence that would authorize such leaving; and such leaving would be an abandonment of his rights as a passenger, and he would cease to be a passenger on leaving the train when it was in motion, and would cease to have the rights growing out of that relation. So that, in order for the plaintiff to maintain her action, she must prove that the train had come to a stop before Jeremiah McKimble left it.

"If the jury shall be satisfied that the train had come to a stop at the time that Jeremiah McKimble left the train, it then becomes important to inquire whether he had a right to leave the train when it was at rest at the place where he left it. There is some evidence, and there has been much discussion, as to whether there was not, five hundred feet or more distant from the point where Jeremiah McKimble left the train, a station of the defendant road. But all the evidence in the case with reference to the station claimed to be located at Charlestown locates the station and all provisions for receiving passengers upon the other side of the track from the place where McKimble stepped from the train. And whether you are satisfied upon all the

conflicting evidence that there was a station at Charlestown, upon the other side of the track, is only important with reference to the question involved in this case in another aspect, of which I shall speak later. There is no evidence in the case, whether there was a station at Charlestown or not, that would authorize a jury to find that the corporation had made provision to receive passengers upon the left of the outgoing track, or that any passenger would have a right to get off at that point and at that place.

" But that is not conclusive of the plaintiff's right to recover. Although, as a passenger, he was only entitled to leave the train at some station or place at which the train upon which he was should stop, and by such means and methods as were there provided for passengers to leave the train, still it is not conclusive that he ceased to be a passenger because he left the train upon the side of the track on which no provision had been made to receive passengers, and upon which there was no inducement offered affirmatively by the defendant corporation for passengers to leave the train. For if the plaintiff shall show, if it shall appear from the whole evidence, that the occasion of McKimble getting off upon that side of the train was the negligence of the defendant corporation, then he retained his status as a passenger, and was entitled to the rights, and his administratrix is entitled to her rights, as a passenger under this statute.

" In order to maintain the action, it must be shown that the negligence of the corporation was the occasion of his leaving the train. In other words, that, but for the omission of something which the corporation was bound to do, McKimble would not have left the train at the point where he left it, upon the side of the track on which he left it.

" In determining what the corporation ought to have done at this point for the safety of passengers, you are to take into account all the circumstances that existed there: the fact that the law required the train to stop at that point where the head of the train would be some five hundred feet from the proposed crossing of the Fitchburg road, and the rear of a train of such length as the train in question at this time would be something like one thousand feet from the crossing, and extending over the draw; and at this point, or, though not extending over the draw at this

point, still stopping against the freight yard, which was in constant use as a freight yard, with the shifting engines continually passing and repassing. You are also at liberty to consider the proximity of a station, if you find a station to be proved, upon the other side of the track, and the provisions there made for passengers to enter the train or to leave it, as you find them to be upon the whole evidence ; all circumstances that existed at that time ; what cause the road had to suppose that passengers would be liable to leave its train at that point, and would be liable to take the left side rather than the right, where the provision, such as was made, was wholly made; and what duty it imposed upon them.

"It is said by the plaintiff that there should have been railings upon the cars, which should, at that point at least, have been fastened, so that a passenger would have been forcibly prevented from going out in that direction. It is also suggested that some of the employees of the road should have been charged with the duty of warning passengers who were about to leave the train at that point. It is also suggested that there should have been some barrier upon the premises themselves to prevent passengers from leaving on that side. Now this is wholly a question of fact for you. The obligation of the road with reference to that matter was to use reasonable care for the safety of its passengers, — care suited to the dangerous character of the business, exacting in proportion to the dangers, but also limited and modified by the necessities of the business.

" And you are to find negligence, if you find it at all, from the evidence. It is the duty of the plaintiff to prove her case, — to prove that McKimble was, at the time he received his injuries, a passenger; and she must prove that that which is wanting, which she claims should have been provided, would, in fact, have been required by due and ordinary care on the part of the railroad. If the appliances suggested would protect a passenger from one danger and expose him to another and greater danger, then it would be obvious that it would not be required of the road to guard the passenger against one danger at the expense of exposing him to a greater. It must appear to your minds that there was something which the defendant corporation should have done at that point to prevent its passengers from leaving the

cars upon the side toward the freight yard, exposed as it was, which they did not do, and for the want of which Jeremiah Mc-Kimble left that train.    If that is established, then he retained his character as a passenger.

" It would not be sufficient to show that there was negligence, that they omitted to do something which they ought to have done to prevent passengers leaving, if that was not what caused him to leave.    For instance, to illustrate what I mean, if you should be of opinion that it was the duty of the corporation to have had somebody there to warn him of his danger, and it did not have any one there so to warn him, but the evidence should show you that he was warned, and warned as effectively as he could have been by an agent of the corporation, then you could not find that his leaving the train was the result of the negligence of the corporation with reference to a warning.    So with regard to anything which you find, upon the evidence, that the corporation should have done, that it did not do, to prevent its passengers from leaving its trains at that point in that way, you must be satisfied also that that was what caused McKimble to leave the train ; that if the corporation had performed its duties in that respect, McKimble would not have left the train in the manner he did.    And then, as I said at the outset, the plaintiff must satisfy you that death itself resulted from the negligence of the corporation.    That might result from the negligence of the corporation that occasioned his leaving the train, and that might be the sole negligence ; or it might be the combined result of that negligence and other negligence alleged by the plaintiff.    The plaintiff claims that there was negligence in running a shifting engine past the passenger train when at rest, when at the station stopping, when passengers were liable to be leaving it or taking it.

" The jury should understand that this provision of the statute, differing from other actions of tort, differing from an action brought by a passenger to recover for personal injuries, makes it possible to recover though the passenger were at fault, and though the want of care on his part contributed to the injury. But, in determining whether the death resulted from the negligence of the corporation, you are, of course, to consider any negligence proved on the part of the plaintiff, as to whether it

itself constituted the cause of his death. If he left the train in consequence of the negligence of the ·corporation, and came to his death by reason of the negligence of the corporation, the fact that he was at fault does not defeat his right. But if he left the train in consequence of his own fault, and came to death in consequence of his own fault, and not from the fault of the corporation, then of course he would have no right of action."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*S. Lincoln*, for the defendant.

*C. G. Fall*, for the plaintiff.

DEVENS, J. The defendant contends that the plaintiff's intestate forfeited his rights as a passenger by voluntarily leaving the train at Prison Point, without regard to the manner in which he left it; that is, assuming that the conduct of the plaintiff's intestate was in all other respects proper, the fact that he left the train there deprived him of his rights as a passenger. But Prison Point was not merely a place where the defendant was obliged by law to stop its trains, but by the eastern side of the track were a building and platform adapted for the use of passengers, and used by them to enter the defendant's trains, as well as by the defendant's workmen at its shops in the immediate vicinity. This certainly was some evidence of an inducement to enter and leave the trains at this place; and, under the instructions given the jury, they were to determine whether there was, at that place, a station or place prepared for passengers to stop. This inquiry was of importance as bearing upon the second question in the case. This arose from the circumstance that the plaintiff's intestate actually left the train upon the western side, where there was no station or preparation for passengers.

It is the further contention of the defendant, that the plaintiff's intestate forfeited his rights as a passenger by intentionally leaving the train upon the side upon which no provision had been made for passengers. This contention is, in substance, that, even if it can be held that there was any inducement or invitation to leave the train, it was simply on the eastern side; and that the duty of the defendant to protect its passengers was coextensive only with the invitation, and cannot be further

extended. But if the train had reached a point where the passenger might lawfully leave it, as it was clearly dangerous to do so on one side, and no means were provided to prevent passengers from leaving on the wrong side, and no direction was given them not to do so, it was a question for the jury whether reasonable care for the safety of the passengers had been used by the railroad; and the instructions on this part of the case were full and careful. He would still be a passenger, within the meaning of that word in the statute, if, by reason of the defendant's neglect of precautions which it should have taken, the plaintiff's intestate left the cars upon the wrong side, and thereby lost his life.

The case appears to be substantially determined by the former decision in this case. *McKimble* v. *Boston & Maine Railroad*, 139 Mass. 542. It was not necessary to prove that the plaintiff's intestate was not negligent, if he was a passenger, and his life was lost through the negligence of the defendant, or the gross negligence of its servants or agents. Pub. Sts. *c.* 112, § 212.

*Exceptions overruled.*