## ALABAMA G. S. RY. CO. v. COGGINS.

(Circuit Court of Appeals, Sixth Circuit. July 5, 1898.)

### No. 520.

1. CARRIERS OF PASSENGERS—NEGLIGENCE—PERSONAL INJURIES AT STATION.
   Where a railroad passenger, without objection by the company or its agents, alights at an intermediate station, where passengers are received and discharged, for any reasonable and usual purpose, like that of refreshment, the sending or receipt of telegrams, or of exercise by walking up and down the platform, or of the like, he does not cease to be a passenger, and is justified in the belief that the company is exercising due care for his safety.

2. SAME—QUESTION FOR JURY.
   Plaintiff, an employé of a telegraph company, whose line extended along the railroad, was traveling in the caboose of a freight train to a point where repairs were to be made. Near an intermediate station the train stopped at the usual place for the alighting of passengers, which was some 1,500 feet from the station proper. Plaintiff alighted, and, according to the testimony in his behalf, started to walk to the station, to see if there was any telegram for him from his employer, going by the only practicable way, which lay between the train track and a side track. The evidence for defendant was that plaintiff had no business at the station, and was merely loitering between the tracks. He was struck while on a cut-off track by a car which the trainmen were switching to the side track. Held, that the question whether, at the time, he was entitled to the degree of care due a passenger, or merely to that due a stranger on the tracks, was properly left to the jury, under proper instructions.

3. NEGLIGENCE—EFFECT OF GEORGIA STATUTES.
   Code Ga. §§ 2972, 3034, change the common law in respect to liability for negligence only in the particular that when there is negligence by both parties, which is concurrent and contributes to the injury, plaintiff is not barred entirely, but may recover damages reduced below full compensation by an amount proportioned to the amount of the fault attributable to him.

4. CARRIERS OF PASSENGERS—NEGLIGENCE AT RAILWAY STATION.
   When a passenger is proceeding in the usual way from a train to the station, he has a right to assume that the company will not expose him to danger without full warning; and, though this does not relieve him from exercising ordinary care in a yard where trains are moving about, it is a

question for the jury whether he is not justified in assuming that a train on the main track would not suddenly be switched across the only practicable path open to him, without some special warning.

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

Wm. L. Frierson, for plaintiff in error.

Champe S. Andrews, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge.    This is a writ of error to reverse the judgment for the plaintiff below in an action for damages for a personal injury inflicted in Georgia.    The plaintiff, Coggins, was a lineman or telegraph repairer in the employ of the Western Union Telegraph Company.    His wages were $50 a month, and his expenses.    He was furnished by his employer with an annual pass over the defendant's road.    Upon what consideration this annual pass was issued by the railroad company to the telegraph company did not appear in the evidence.    The contract was called for by plaintiff's counsel, and was not produced.    The court charged the jury that the rights of Coggins were the same as if he had paid his fare, and this, though excepted to, is not assigned for error.    The evidence for the plaintiff tended to show the following state of facts:    Coggins was directed by his superior to take passage on this train, which was a freight train carrying passengers, for Crudup, where the telegraph line needed repair.    At Rising Fawn, Ga., an intermediate station, the train stopped to do some switching.    The caboose in which Coggins was riding stopped about 1,500 feet from the station.    This was the usual place for passengers by freight trains to alight.    The only practicable way of reaching the station from this point was to walk between the main track and the house or scale track, which lay parallel to the main track on the right.    Coggins had inquired of the brakeman how long the train would remain at Rising Fawn, and, on being told that its stay would be half an hour in length, alighted from the caboose, and walked between the tracks towards the station, to inquire whether there were any telegraph messages to him from his superior.    It was customary for his superior, when he was out on the line, to telegraph orders to points where his train was likely to stop.    As Coggins walked towards the station, he saw part of the train upon which he had come backing towards him on the main track.    As it approached, he concluded it would be safer to cross over near to the house or scale track, lying parallel.    A cut-off or switch track crossing diagonally from the main track to the house track lay just in front of him, and at his side.    He crossed this, towards the scale track. His left side was now towards the approaching train.    As he stepped over the second rail of the cut-off track, he heard a brakeman on the ground back of him calling in a loud voice to another brakeman on the approaching train.    To see the cause of the calling, he turned half round towards the right, just as he reached the end of the ties of the cut-off track.    As he did so, the cars, which, instead of continuing

on the main track, as he expected, had been switched on to the cut-off track, struck his right shoulder, whirled him about, and threw him on his back, with his left arm under the wheels. He was more or less familiar with the yard at Rising Fawn, and the brakeman engaged in switching the train had told him that they were about to switch a number of cars on to the furnace tracks, which lay to the east of the main track, and on the side opposite to the house or scale track. Hence he did not anticipate that the train, as it approached, would be switched over on the house track cut-off. Both the brakemen engaged in switching the train were where they could have seen Coggins had they looked; and one did see him, but was made so speechless at the sight of his danger as not to give him warning, and the other one, who was on the rear end of the backing train, did call, but not until it was too late for Coggins to escape. This is the case for the plaintiff.

The defendant introduced evidence to show that the accident occurred 15 or 20 minutes after the train stopped at Rising Fawn; that Coggins was loitering along between the tracks, talking with acquaintances whom he met there; that he had no ground to anticipate the receipt of telegraphic orders at that point; and that he was standing on or near the track, looking up at the telegraph wires, when struck. Counsel for the railroad company excepted to that part of the charge of the court in which, after explaining the high degree of care a railroad company owes to its passengers, the court submitted to the jury as an issue of fact whether Coggins was to be regarded as a passenger when he was injured. Upon this point the court said:

"Now, then, when the company undertook to carry him on this freight car so long and while he was a passenger, the company owed to him the highest degree of care for his protection, for his safety, as it did to any other passenger; provided, of course, that a passenger who takes or undertakes to ride on a freight car understands there is a difference between that and a passenger car, that it is managed differently, that the appliances are different, that its conveniences are different; and, of course, it is only the exercise of that high degree of care, such as it might practically exercise with a freight train as distinguished from a passenger train. The increased danger of riding on a freight train as compared with a passenger train the passenger undertook himself, and the company was required to exercise care of the highest character in the management of a freight train, but not of the same degree it would be bound to do in a passenger train.

"Now, when they reached Rising Fawn, that not being the plaintiff's place of destination, if he alighted from the car intending to go direct to the depot for a particular business purpose, and with the intention of returning when that purpose was accomplished, he would, while going to and from the depot, exercising the proper diligence due from a passenger, remain a passenger, and would be entitled to the degree of care belonging to a passenger. Now, that rule applies until he had time to get off the car, going along exercising reasonable prudence to do so, attend to his business (if he had any), and return, and no longer. The liability of the company to him as a passenger lasted only so long as to give him a reasonable time in which to get to the depot and return, after transacting his business, and did not extend to him after the lapse of that time. After that they owed him no duty, except that which they owed to any stranger,—not to wantonly or unnecessarily injure him.

"Now, then, coming back after the train stopped: If they stopped that train at the place where it was usual for passengers to get out and alight from a train whose point of destination was there, where it was usual for passengers to get out and go to the depot on proper business, and this man

Coggins got out and went along on his business, as an ordinarily prudent man would do, and was on his way to the depot, the company owed him that degree of care that it owes to its passengers not to hurt him, and so operate its trains as that during the time necessary for him to get out and back, that they would not strike him on his way, provided he was moving along the usual way of going to the depot; and if the company failed to exercise that degree of care, and he was struck and injured, it would be liable for the accident. Now, on the contrary, if, after they had got in the yard, he got out of the train, without having any business that required him to go to the depot, that not being his point of destination, or without having any particular business to go to the depot, and instead of going by the direct and usual route and within a reasonable time, such as any other man (a prudent man) would have required to go to the depot; and if, instead of that, he, out of mere curiosity, got out to look through the yard and talk with the employés. in the yard,—if he stopped in the yard, and began to talk and loiter about the yards there in conversation, or if he began to look at the overhead wires, as one of the witnesses indicates probably he did (at least, there is a silent proof that tends to show that),—why, then, in each of these contingencies, he would cease to be a passenger, but would be there on the switch yard at his peril; and the only duty the defendant company would owe to him in such a situation as that would be the duty not to wantonly or unnecessarily injure him, and they would owe him no greater duty than they would owe to a stranger in the yard without any business."

The foregoing states the law correctly, and leaves to the jury the issue in such a way as to enable them, without difficulty, justly to determine whether Coggins was entitled to the high degree of care from the railroad company due a passenger when he was struck. The Georgia Code (section 2067) provides that:

"A carrier of passengers is bound to extraordinary diligence on behalf of himself and agents to protect the lives and persons of his passengers, but he is not liable for injuries to the person after having used such diligence."

As the accident happened in Georgia, this section furnishes the law of the present case. Railroad Co. v. Ihlenberg, 43 U. S. App. 726, 21 C. C. A. 546, and 75 Fed. 873. But the section is only declaratory of the common law, and the question when one who has been a passenger ceases to be such must still be determined by the common law. It is well settled that the obligation of a common carrier of passengers continues so long as they conform to the reasonable regulations of the carrier; not only while they are on the cars or other vehicle of transportation, but also while they are on the carrier's premises for the purpose of the journey in going to or coming from the means of conveyance. Gaynor v. Railway Co., 100 Mass. 208; Terry v. Jewett, 78 N. Y. 338; Brassell v. Railroad Co., 84 N. Y. 241; Klein v. Jewett, 26 N. J. Eq. 474, affirmed in 27 N. J. Eq. 550; and Baltimore & O. R. Co. v. State, 60 Md. 449, 463. The authorities are not quite so uniform upon the question whether the obligation of the carrier extends to the same degree of care over the safety of its passengers when they alight at intermediate stations, and go to the station house while the train is waiting. But we think the weight of authority, reason, and custom all require us to hold that where a passenger, without objection by the company or its agents, alights at an intermediate station, which is a station for the discharge and reception of passengers, for any reasonable and usual purpose, like that of refreshment, of the sending or receipt of telegrams, or of exercise by walking up and down the platform, or the like, he does

not cease to be a passenger, and is justified in the belief that the company is exercising due care for his safety. The question is fully considered in a most satisfactory opinion in Dodge v. Steamship Co., 148 Mass. 207, 19 N. E. 373; in which the conclusion just stated is announced, and is fortified by many authorities. Other cases in which the same view is taken are McKimble v. Railroad Co., 141 Mass. 463, 470, 5 N. E. 804; Parsons v. Railroad Co., 113 N. Y. 362, 363, 21 N. E. 145; Packet Co. v. True, 88 Ill. 612; Dice v. Locks Co., 8 Or. 60; Railroad Co. v. Riley, 39 Ind. 568; Railroad Co. v. Shean, 18 Colo. 368, 33 Pac. 108; Clussman v. Railroad Co., 9 Hun, 618, approved 73 N. Y. 606; and Hrebrik v. Carr, 29 Fed. 298, 300. There is nothing in the case of Railroad Co. v. Thompson, 76 Ga. 776, which in any way conflicts with these cases. There are two cases in which the contrary view is announced, though the facts of each case were such that it would seem to have been unnecessary to the decision. State v. Grand Trunk R. Co., 58 Me. 176; De Kay v. Railway Co., 41 Minn. 178, 43 N. W. 182.

In the case at bar it was well established that the point at which the caboose of the freight train stopped was more than 1,500 feet from the station; that this was the usual point for the alighting of passengers from that train; and that the only practicable way to reach the station house from there was to walk between the train track and the house track, as the plaintiff did. It was in evidence that he had reason to expect to find a telegram for him at the station, and that he went directly there to get it. If this was true, he was a passenger, and had a right to rely on the company's exercising a high degree of care not to run him down. His evidence was contradicted, and the testimony of the railroad company tended to show that he loitered between the tracks, and had no business at the station. That made an issue for the jury, which the court left to them under proper instructions.

Another exception by defendant was based on the refusal of the court to give a charge in the words following:

"If the plaintiff was himself at fault in having exposed himself to the danger of being hit by a moving car, he cannot recover at all, unless he has shown by a preponderance of the evidence that the servants of the defendant were guilty of such negligence as would amount to wantonness."

The legislature of Georgia has enacted laws defining the cases in which liability for negligence arises. They are as follows:

Code, § 2972: "If the plaintiff by ordinary care could have avoided the consequences to himself, caused by the defendant's negligence, he is not entitled to recover. But in other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained."

Section 2067: "A carrier of passengers is bound to extraordinary diligence on behalf of himself and agents to protect the lives and persons of his passengers, but he is not liable for injuries to the person after having used such diligence."

Section 3033: "A railroad company shall be liable for any damage done to persons, stock, or other property, by running of the locomotives or cars, or other machinery of such company, or for damage done by any person in the employment and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company."

Section 3034: "No person shall recover damages from a railroad company for injury to himself or his property, where the same is done by his consent, or is caused by his own negligence. If the complainant and agents of the company are both at fault, the former may recover, but the damages shall be diminished by the jury in proportion to the amount of default attributable to him."

Sections 2972 and 3034, when read together, introduce a variation from the common law in one respect only. They declare, first, that a plaintiff shall not recover when the accident is caused by his own negligence. They further declare that, even if the defendant was negligent in such a way as to cause the injury, the plaintiff shall not recover if, with the defendant's negligence as an existing condition of the situation, he could have avoided its consequences by ordinary care. So far these rules are the same as those established at the common law. Coasting Co. v. Tolson, 139 U. S. 556, 11 Sup. Ct. 653. Finally, however, they provide that, when the negligence of both parties is concurrent and contributes to the injury, then the plaintiff shall not, as at common law, be barred entirely, but may recover damages reduced below full compensation for the injury by an amount proportioned to the amount of the default attributable to him. The decisions of the Georgia court in construing these sections have not always been as clear and as intelligible as might be desired; but the foregoing coincides with the construction which has been put upon them by that court in the latest and earliest cases, which have been called to our attention. Railroad Co. v. Luckie, 87 Ga. 6, 13 S. E. 105; Railroad Co. v. Johnson, 38 Ga. 409, 433. In the case at bar, if the plaintiff was negligent, it was in stepping upon the cut-off track in the face of an approaching train, on the assumption that the train was about to pass him on the main track. If the defendant was negligent, it was in failing to warn the plaintiff, a passenger, that the train was to be switched off onto the cut-off. If the jury were to find both parties thus negligent, their negligence would be concurrent, and the damages must be apportioned. The case was not one where the negligence of defendant had begun, or was actually existing as a condition of the situation when the plaintiff's want of due care intervened, but the want of due care on the part of both was concurrent. Hence the charge asked was not applicable to the case.

Finally, it is assigned for error that the court refused to direct a verdict for the defendant as requested. In this the court was clearly right. If the plaintiff was a passenger at the time of the accident, as the jury might have found from the evidence, then the same rules for determining the existence of contributory negligence on his part do not apply as if he were a traveler at a railway crossing. Terry v. Jewett, 78 N. Y. 338; Brassell v. Railroad Co., 84 N. Y. 241; Klein v. Jewett, 26 N. J. Eq. 474. When a passenger is proceeding in the usual way from the train to the station, he has a right to assume that the company will not expose him to danger without full warning; and, though this does not relieve him from the duty of exercising ordinary care in a yard where trains are moving about, it might well be left to a jury to say whether it did not justify him in assuming that a train on a main track would not suddenly be switched across

the only practicable path open to him in reaching the station, without some special warning. The judgment of the circuit court is affirmed, with costs.