CHESAPEAKE & O. RY. CO. v. KING.

(Circuit Court of Appeals, Sixth Circuit. January 22, 1900.)

No. 747.

1. CARRIERS—INJURY OF PASSENGER AT STATION—CONTINUANCE OF RELATION.
    If a passenger on a railroad train alights by direction of the company, or by its implied invitation, at a place where, in order to leave the premises of the company, it is necessary to cross intervening tracks, he remains a passenger until he has crossed such tracks, provided he uses the means of egress which the company has provided, or which is customarily used with its knowledge and consent; and there is an implied agreement that the trains of the company shall not be so operated as to make the exit unnecessarily dangerous.

2. SAME—CARE REQUIRED OF PASSENGER.
    A passenger alighting under such conditions, while not absolved from the duty of exercising care to avoid danger, may be justified in presuming, in the absence of circumstances of warning, that the trains of the company will not be so operated as to impose on him the same high degree of care which he would be required to exercise if he were not a passenger, but a traveler crossing the railway at a public crossing.

3. SAME—ACTION FOR INJURIES—QUESTIONS FOR JURY.
    Plaintiff, who was a passenger on defendant's railroad, alighted at a station from which it was necessary to cross the tracks to reach the street leading to the town. She passed behind the train, and started diagonally across the tracks at a place which the evidence tended to show was customarily used for that purpose, and when upon the adjoining track was struck by a freight train approaching from the opposite direction, and injured. A rule of the company required freight trains to stop when approaching a passenger train discharging passengers at a station, and there was evidence that such rule was not observed in this instance. Held, that the question whether plaintiff was still constructively a passenger when she was injured, and therefore entitled to a higher degree of care on the part of the company for her protection, and also the questions of the company's negligence and plaintiff's contributory negligence, were properly submitted to the jury.

In Error to the Circuit Court of the United States for the District of Kentucky.

Only the facts essential to the consideration of the single question upon which a reversal is sought need be stated. The plaintiff below, a young woman, sustained very serious injuries by collision with a railroad train while crossing a railway track which intervened between the station of the company at Central City, W. Va., and the nearest public highway or street connecting the village and station. She had taken passage at Ashland, Ky., upon an accommodation train, for Central City, a station east of Ashland. Between Central City and Ashland the tracks are double, and about seven feet apart. The track next the station is used only by east-bound trains, while the other, or northern, track is used only by trains going in the opposite direction. The village of Central City lies wholly north of the railroad tracks, while the station or depot is on the opposite or south side of the railroad. The streets of the town running at right angles with the railroad do not cross its tracks, but extend from them south to the Ohio river. This station house is situated between two streets extending from the railroad to the town, and is about 100 feet from Fourteenth street, which is the nearest of them. Fourteenth street is, therefore, the one used chiefly, if not altogether, by the travel between the depot and the town, and has a pavement or sidewalk only on its western side. The station consists of three connected rooms—a waiting room, a ticket office, and a freight room—extending along the track east and west for a distance of 50 feet. In front of this station is a wooden platform about 6 feet wide. Between this platform and the nearest track is a cinder path, also about 6 feet wide, which extends west beyond the station to a point 7 feet west of the eastern line of Fourteenth street. Persons going from the town to the station and from the station to the town were accustomed to cross the tracks at any point between the station and Fourteenth street, and this mode of going to and from the station, which was only 100 feet east of Fourteenth street, was well known to the railroad company, and was unobjected to. The plaintiff's train stopped as usual in front of the station, and she alighted, as was customary, on the cinder path next the station platform. Following this path to the rear of her train, which had come from the west, she crossed the most southerly track immediately behind the standing train, and diagonally in the direction of Fourteenth street, and continued this diagonal course across the space between the two tracks. This diagonal direction threw her back partly towards the direction from which a freight train was approaching. Just as she was crossing the second track, she was struck and seriously injured by a train rapidly passing in a direction opposite to that from which her own train had come. This train approached the station with all the usual and proper signals, and her danger was not observed until too late to avert the accident. The evidence made it clear that she could not have seen the train until after she came out from behind the standing train, and there was also evidence tending to show that the noise made by the standing engine, through escaping steam, was likely to deaden the effect of the signals given by the approaching train, as well as the noise made by its travel. Plaintiff testified that she neither heard nor saw the train which collided with her, and that she was looking from the time she started across these tracks. But it is clear that she did not look in the direction from which the colliding train approached, for it was broad daylight, and after she came out from behind the standing train the approach of a train on the other track from the east could have been seen for half a mile, if she had looked in that direction. There was a rule of the company that all "trains approaching a station where a passenger train is receiving or discharging passengers must be stopped before reaching the passenger train." There was evidence tending strongly to show that on this occasion this rule was not observed by the train which collided with the plaintiff, and that it passed the standing train, from which plaintiff alighted, while it was still receiving and discharging passengers, at a speed of from 10 to 12 miles per hour. At the conclusion of all the evidence the defendant below asked for a peremptory instruction against the plaintiff upon the ground of her contributory negligence. This was overruled, and is the principal error now assigned. The court submitted the case to the jury upon the

theory that the plaintiff was still a passenger while making her egress from the station over the premises of the company to the nearest public highway, and therefore entitled to a reasonably safe way of exit, and only required to exercise ordinary care in avoiding danger from the movements of trains over tracks which she was obliged to cross in order to make her way to the public street. The charge of the court in respect to the continuance of the relation of a passenger, after safely alighting at the station, and the degree of care incident to such continued relation, was also excepted to, and presents the same question which arose upon the incontestable facts of the case by the motion for a peremptory instruction.

A. M. J. Cochran, for plaintiff in error.

D. W. Steele, for defendant in error.

Before LURTON and DAY, Circuit Judges, and THOMPSON, District Judge.

LURTON, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

This case must turn here, as it did below, upon the single question as to whether the defendant in error, at the time she was injured, stood in the relation of a passenger to the railroad company. The insistence of counsel for the company is that when Miss King alighted from the train on the cinder path, between her train and the depot platform, she was in a place of safety, and the relation of carrier and passenger at an end. It is true that when upon the cinder path there was no obstacle between her and the depot platform. But can it be said that she was clear of train and tracks when it was necessary to cross two tracks before she could get off of the company's premises and upon the public highway? The cinder path was on the company's right of way. She might have pursued that path until she reached a point opposite Fourteenth street, and then crossed. That was doubtless the safer course, for it would have given her a clear view of both tracks. But the evidence tended to show that passengers alighting where she did more usually crossed the tracks immediately in front of the depot, or crossed them obliquely in the direction of the head of Fourteenth street, and that any of these ways of going from the station were equally approved by the company. The question as to whether the company had provided a particular way of egress from its premises, or acquiesced in the crossing of its tracks at any point between the station and the head of the public street, was a question of fact submitted to the jury. If it was equally open to her to cross diagonally to Fourteenth street as she did, the question is whether the company was under any obligation to her to so operate its trains that that way. off of the company's premises should not be unnecessarily dangerous. If, while making her way from the station to the public street, she was constructively still a passenger, then the company did come under a higher obligation to provide a reasonably safe mode of exit than if she was a mere traveler crossing at a public highway or elsewhere by license of the company. Did the relation of passenger and carrier continue while making her way across these tracks, or did it terminate when she alighted upon a path between which and the public street these tracks intervened? Upon this subject the learned circuit judge instructed the jury as follows:

"But the defendant railway company owes more to a passenger than merely to provide a place to alight. It must provide a place reasonably adapted for alighting on its own grounds, from which there is access to some public highway. While passengers are upon its premises, using that convenient means of access which the company furnishes for passengers to alight and reach the highway, they continue passengers, provided they obey the rules of the company, and use that means of access to the highway from the place of alighting in the manner that the company intends and gives them reason to believe they are to use it."

Upon the subject of the duty of the passenger to use the way of egress from its premises provided for that purpose, the court said:

"Now, if you find that there was a way provided along the track running down to a place opposite Fourteenth street, and that that was the way which the company intended that their passengers should go, and that this crossing of the track where she did cross it was not with the permission of the company, then the company is not responsible for the accident which occurred by reason of her going a different way from that which was provided; because, you will observe, if she had gone down on the south side of the track to Fourteenth street she would have avoided the danger of crossing the track just behind a train in such a way that she could not have seen the train coming on the other track; but, if the company permitted another way, so that it was well recognized as the way for the passengers to leave the station, by crossing the track directly back of the train, and not going clear down to a point opposite Fourteenth street, then you would be justified in finding that this plaintiff was using a way which the company intended she should use, and was a passenger."

On the same subject the court said:

"Now, if you find that the company permitted the way to be used which was used by the plaintiff in reaching Fourteenth street, then I charge you that she was a passenger, and entitled to that care from the company which passengers under the law have a right to expect. That care is much higher than the care due to a mere traveler crossing the tracks, or to a trespasser on the track."

In respect to the alleged contributory negligence of the defendant in error, the court said:

"Now, was she negligent? Did she do something in crossing that track that a reasonably prudent person would not have done, and which, if she had not done, she would not have been injured? If so, she cannot recover. Of course, you would not have reached this point in the case without finding that she was a passenger. As a passenger she had a right to expect that the company would look after her welfare more than if she were a mere traveler, and so you must consider that relation that she bore to the company in determining whether she was guilty of negligence. How far she ought to have relied on the company to prevent her injury in this case is for you to determine. Of course, she cannot rely absolutely on that, otherwise she might thus just blindfold her eyes, and wander about there on the passageway provided for her without any regard whatever to whether she would be injured or not; but, on the other hand, it is an element which you are to consider that she had a right to put some reliance on the care of the company. The ordinary rule of a traveler crossing the track is that he must look and listen. That rule, in the case of a passenger crossing the track under these circumstances, is modified by the reliance which he or she is entitled to put upon the care the company will exercise to save him or her from injury. It is for you to judge how much she ought to have relied upon that in this case. If you find that she relied too much on it, and that she ought to have used her senses more, and that, if she had, she would have avoided the injury, then she cannot recover here."

This was a clear and sound exposition of the law relating to the facts of this case, and is fully supported by Railway Co. v. Lowell, 151 U. S. 209, 14 Sup. Ct. 281, 38 L. Ed. 131; Warner v. Railroad Co., 168 U. S. 339, 18 Sup. Ct. 68, 42 L. Ed. 491; Graven v. MacLeod,

35 C. C. A. 47, 92 Fed. 846; Railway Co. v. Coggins, 32 C. C. A. 1, 88 Fed. 455; Browell v. Railroad Co., 84 N. Y. 241; Railroad Co. v. Anderson, 72 Md. 519, 20 Atl. 2, 8 L. R. A. 673; Railway Co. v. Johnson, 59 Ark. 122, 26 S. W. 593; Pennsylvania Co. v. McCaffrey, 173 Ill. 169, 50 N. E. 713; and Burnham v. Railway Co., 91 Mich. 523, 52 N. W. 14. The case is not distinguishable on principle and is clearly analogous in its facts to that of Graven v. MacLeod, decided by this court, and cited above. In that case, Graven, after alighting in safety upon a cinder path between two tracks, left that place of safety, and crossed the track intervening between that place and the street, which crossed both tracks some distance to the right of his point of alighting. It is true that when he had thus alighted he was not clear of train and track, because one track intervened between him and the public highway. Neither was the defendant in error clear of train and track, for two tracks intervened between her and the only highway by which she could leave the premises. If counsel for plaintiff in error is right in construing the Graven Case as one in which the facts showed that the "act of alighting was incomplete" until Graven reached the outside of the other track, and was clear of it, then the same condition existed in respect to the defendant in error. If a passenger alights by direction of the company, or by its implied invitation, at a place where, in order to leave the premises of the company it is necessary to cross an intervening track, there is an implied agreement that in using that mode of egress from the premises its trains shall not be so operated as to make the exit unnecessarily dangerous. This is the doctrine of the Lowell and Warner Cases, cited above, and is the principle which governed the Graven Case, and which was so well expressed in the charge of the circuit judge below. A passenger alighting under such conditions may, in the absence of circumstances of warning, be justified in presuming that the trains of the company will not be so operated as to impose on him the same high degree of care which he would be obliged to exercise if he were not a passenger. Neither is this reliance upon the care of the company dependent wholly upon a knowledge of a rule forbidding trains to pass another while receiving or discharging passengers. That rule is but an expression of that degree of care which a passenger would have a right to expect from a railroad company under such conditions. In Terry v. Jewett, 78 N. Y. 338–344, it was said that:

"It may be assumed that a railroad corporation, in the exercise of ordinary care, so regulates the running of its trains that the road is free from interruption or obstruction where passenger trains stop at a station to receive and deliver passengers. Any other system would be dangerous to human life, and impose upon those who might have occasion to travel on the railroad."

This language was quoted and approved in Warner v. Railroad Co., cited above, where it was said, in speaking of the implied invitation extended by a situation such as that shown in this case, that:

"The railroad, under such circumstances, in giving the invitation, must necessarily be presumed to have taken into view the state of mind and of conduct which would be engendered by the invitation; and the passenger, on the other hand, would have a right to presume that in giving the invitation the railroad itself had arranged for the operation of its trains with proper care."

The failure to look and listen before crossing a railway track is negligence per se in a traveler at a highway. Railroad Co. v. Houston, 95 U. S. 697, 24 L. Ed. 542; Schofield v. Railway Co., 114 U. S. 615, 5 Sup. Ct. 1125, 29 L. Ed. 224; Railroad Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. 569, 35 L. Ed. 213; Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; Railroad Co. v. Griffith, 159 U. S. 603, 16 Sup. Ct. 105, 40 L. Ed. 274; Railway Co. v. Cody, 166 U. S. 606, 17 Sup. Ct. 703, 41 L. Ed. 1132; Railroad Co. v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014; Blount v. Railway Co., 9 C. C. A. 526, 61 Fed. 375; Railway Co. v. Farra, 13 C. C. A. 602, 66 Fed. 496. But there is a difference in the degree of care and caution demanded from a traveler crossing a railway at a public crossing and that demanded from a passenger in crossing tracks which intervene between the usual place of alighting from cars and the public highway. In the latter case the company should furnish the passenger with reasonable and adequate protection against accident in the exercise of the privilege of a safe exit from its premises. But such a passenger, in either going to or crossing from the cars, is not absolved from the duty of exercising care and caution in avoiding danger according to the circumstances. The failure of a passenger to look or listen under such circumstances may or may not be negligence, according to the peculiar facts, and is, as held in the cases of Warner v. Railroad Co. and Graven v. MacLeod, cited above, ordinarily a question of fact for the jury. It was not error to refuse the peremptory instruction asked by the plaintiff in error, and the judgment must be affirmed.