## HINES, Director General of Railroads, v. HOOVER.

(Circuit Court of Appeals, Fifth Circuit. March 15, 1921.)

No. 3633.

1. **Railroads ⊜⇒312(15)—Duty to exercise care required by circumstances when approaching crossing.**

   It is the duty of those in charge of a train in approaching a road crossing, in addition to compliance with statutory requirements, to perform any other acts required by the circumstances of the case and dictated by the rules of ordinary care and diligence.

2. **Railroads ⊜⇒350(16)—One approaching crossing not bound as matter of law to stop, look, and listen.**

   It is not the general rule that one approaching a railroad crossing is bound, as a matter of law, always and under all circumstances to stop, look, and listen.

3. **Railroads ⊜⇒301—Duty of care at crossings mutual and reciprocal.**

   The obligations, rights, and duties of railroads and travelers on intersecting highways are mutual and reciprocal. It is the duty of the railroad to give such warning as is reasonable and timely under the circumstances of the case, and of those crossing the track to exercise ordinary care and diligence to ascertain whether a train is approaching, and whether such care has been exercised by either party under the particular circumstances of the case is usually a question for the jury.

4. **Railroads ⊜⇒346(6)—One approaching crossing presumed to have looked and listened.**

   In the absence of evidence, the presumption is that one approaching a railroad crossing looked and listened.

5. **Railroads ⊜⇒350(9)—Liability for killing person at crossing question for jury.**

   In an action for the death of a person killed while crossing a railroad track in an automobile by a train running 50 miles an hour, which could not be seen from the highway until within 20 feet from the track, where the bell was not being rung, and whether the statutory whistle signal was given was in dispute, the case *held* properly submitted to the jury.

In Error to the District Court of the United States for the Southern District of Georgia.

Action at law by Sarah Ann Hoover against Walker D. Hines, Director General of Railroads, operating the Atlantic Coast Line Railway. Judgment for plaintiff, and defendant brings error. Affirmed.

A. A. Lawrence, Edmund H. Abrahams, and F. R. Youngblood, all of Savannah, Ga., for plaintiff in error.

F. M. Oliver and Edgar J. Oliver, both of Savannah, Ga., for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. This suit was brought by defendant in error, herein called plaintiff, against the Director General of Railroads, to recover damages for the death of her husband.

Plaintiff's decedent was killed by a passenger train of the Atlantic Coast Line Railroad Company at Drakie's road crossing in the village of Monteith, Ga. The railroad extends in a north and south line through this village. About 375 feet south of the Drakie road cross-

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ing, a public highway 20 feet in width, called the Augusta road, crosses the railroad obliquely, and bears away from it north of the public crossing in a straight line, and at a distance of 900 feet is approximately 300 feet west of the railroad track. Drakie's road begins and leads away from the Augusta road at a point about 50 feet west of the railroad track, which it intersects at right angles. Although Drakie's road is not a public road, it was in common use many years before the railroad was built, and Drakie's crossing has been maintained and kept in repair by the railroad company. There is another private road, leading eastward from the Augusta road, which crosses the railroad about 325 feet north of the Drakie road crossing. Between these two private crossings, and lying between the Augusta road and the railroad, are two houses, a fence, a tree, and a grape arbor, extending up to the railroad right of way and within 35 feet of the track. At the time of the accident the right of way was grown up in weeds so high, according to some of the witnesses, that it was impossible for a man riding in an automobile to see a train coming from the north until he was within 15 or 20 feet of the railroad track. There was some testimony that the view was obstructed by the weeds as close as 5 feet of the track. On the right of way, also, was a small station house which further obstructed the view to the north.

Just immediately before the accident, plaintiff's husband started his automobile from the intersection of the Drakie and Augusta roads, and was proceeding to cross the track on Drakie's road when a train coming from the north struck the automobile which he was driving and killed him. The train was at least half an hour behind its schedule, and no train was due at that time. The schedule called for an average speed of 35 miles per hour, with the privilege of running as high as 50 miles per hour to trains making up lost time. The evidence was in conflict as to the speed of the train at the time of the accident; some of the witnesses testifying to a rate not exceeding 35 miles per hour, and others estimating the speed at from 50 to 65 miles per hour. The witnesses agreed that two short blasts of the whistle were sounded at the moment of the collision, but there was conflict as to whether the whistle was blown before that. The engineer testified that he did not see plaintiff's husband until he was within 15 feet of the track, and that after that he made every possible effort to stop the train, and that in fact he did stop within less than 500 feet south of the point of the accident. It is not claimed that the bell was rung, or that any other warning was given. There is not much, if any, doubt that the weeds were high enough to obstruct the view of one on the railroad right of way until he was within 15 or 20 feet of the track.

At the close of the evidence the court denied defendant's motion to direct a verdict, and also refused his request to charge the jury as follows:

"It was the duty of the deceased to use his senses to avoid injury, and if you find that he did not stop, look, and listen, and that he could have avoided the injury by stopping, looking, and listening, you should find for the defendant."

The jury found for the plaintiff and assessed the damages at $5,-000. No complaint is made as to the correctness of the court's charge, and the only assignments of error are based upon the denial of the motion for a directed verdict, and upon the refusal to give the request to charge above set out.

There was sufficient evidence of defendant's negligence. Upon proof of the injury alleged, a presumption of the negligence charged arose under the Georgia Code of 1910, § 2780. It was also the statutory duty of the railroad company to maintain a blow post 400 yards north of the public or Augusta road crossing, and of the engineer to begin sounding the whistle upon reaching the blow post, and to blow two long and two short blasts at intervals of five seconds between each blast, and to keep a lookout along the track ahead of the engine, and otherwise to exercise due care in approaching the public crossing in order to avoid injury to persons or property on or within 50 feet of it. Acts of Georgia Legislature of 1918, p. 212.

It is true that plaintiff's decedent was not at the public crossing or within 50 feet of it, but the court charged the jury, without objection or exception, that if there was a failure to comply with the statute as to the sounding of the whistle, that fact might be considered in connection with the other evidence as bearing upon defendant's negligence; and this charge appears to be in accord with the opinion of the Supreme Court in Atlanta & Charlotte Railway Co. v. Gravitt, 93 Ga. 369, 20 S. E. 550, 26 L. R. A. 553, 44 Am. St. Rep. 145.

[1] In addition to compliance with statutory requirements, it was the duty of defendant to perform any other acts required by the circumstances of the case and dictated by the rules of ordinary care and diligence. 2 Shearman & Redfield on Negligence (6th Ed.) § 463a; Acts of Georgia Legislature of 1918, p. 214. It can hardly be doubted that the obstructions caused by the buildings, fence, grape arbor, tree, and weeds made the question of defendant's negligence one of fact for the jury.

Defendant's chief reliance to defeat recovery is that plaintiff's decedent was himself guilty of such contributory negligence as ought to bar a recovery. Upon this subject are these two Georgia statutes:

"*Consent or Negligence.* No person shall recover damage from a railroad company for injury to himself or his property, where the same is done by his consent, or is caused by his own negligence. If the complainant and the agents of the company are both at fault, the former may recover, but the damages shall be diminished by the jury in proportion to the amount of default attributable to him.

"*Diligence of Plaintiff.* If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. But in other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained."

Georgia Code of 1910, §§ 2781, 4426

As to the effect of the just quoted sections upon the doctrine of contributory negligence unaffected by statutory provisions, see Western & Atlantic Railroad Co. v. Ferguson, 113 Ga. 708, 39 S. E. 306, 54

L. R. A. 802; Alabama G. S. Ry. Co. v. Coggins, 88 Fed. 455. 32 C. C. A. 1; Shearman & Redfield on Negligence (6th Ed.) § 103; I Thompson on Negligence, and Supplement, § 268.

[2] Whatever the true construction of these comparative negligence statutes may be, it cannot be doubted that they were intended to render less harsh the common-law doctrine of contributory negligence. Defendant takes the position that it is the duty of one about to cross a railroad to stop, look, and listen for approaching trains. It is impossible to reconcile all of the cases, and it need not be denied that many can be found to sustain that contention.

We are of opinion that it cannot be said that the invariable rule in the Supreme Court of the United States is that one approaching a railroad crossing is bound, as a matter of law, always and under all circumstances to stop, look, and listen. That is said to be the unbending rule in Pennsylvania, and it is stated by Shearman & Redfield on Negligence, §§ 476, 477, that only in Pennsylvania is this the established and invariable rule, but that generally such failure only becomes contributory negligence as a matter of law where there are no excusing circumstances.

[3] In Continental Improvement Co. v. Stead, 95 U. S. 161, 24 L. Ed. 403, the facts were very similar to the facts in this case. The plaintiff was in his wagon, and was injured while crossing a railroad at right angles in a cut about 5 feet deep. There was evidence that he could not see because of the cut and intervening obstructions; that his wagon was making much noise; that his hearing was impaired; that he did not stop, and did not look toward the north from which direction a special train was coming. In affirming a judgment for the plaintiff, the court said:

"If a railroad crosses a common road on the same level, those traveling on either have a legal right to pass over the point of crossing, and to require due care on the part of those traveling on the other, to avoid a collision. Of course, these mutual rights have respect to other relative rights subsisting between the parties. From the character and momentum of a railroad train, and the requirements of public travel by means thereof, it cannot be expected that it shall stop and give precedence to an approaching wagon to make the crossing first; it is the duty of the wagon to wait for the train. The train has the preference and right of way. But it is bound to give due warning of its, approach, so that the wagon may stop and allow it to pass, and to use every exertion to stop if the wagon is inevitably in the way. Such warning must be reasonable and timely. But what is reasonable and timely warning may depend on many circumstances. It cannot be such, if the speed of the train be so great as to render it unavailing. * * *

"On the other hand, those who are crossing a railroad track are bound to exercise ordinary care and diligence to ascertain whether a train is approaching. They have, indeed, the greatest incentives to caution, for their lives are in imminent danger if collision happen; and hence it will not be presumed, without evidence, that they do not exercise proper care in a particular case. But notwithstanding the hazard, the infirmity of the human mind in ordinary men is such that they often do manifest a degree of negligence and temerity entirely inconsistent with the care and prudence which is required of them— such, namely, as an ordinarily prudent man would exercise under the circumstances. When such is the case, they cannot obtain reparation for their injuries, even though the railroad company be in fault. They are the authors of their own misfortune. These propositions are so indisputable, that they need no reference to authorities to support them. We think the judge was

perfectly right, therefore, in holding that the obligations, rights, and duties of railroads and travelers upon intersecting highways are mutual and reciprocal, and that no greater degree of care is required of the one than of the other. For, conceding that the railway train has the right of precedence of crossing, the parties are still on equal terms as to the exercise of care and diligence in regard to their relative duties. The right of precedence referred to does not impose upon the wagon the whole duty of avoiding a collision. It is accompanied with, and conditioned upon, the duty of the train to give due and timely warning of approach. The duty of the wagon to yield precedence is based upon this condition. Both parties are charged with the mutual duty of keeping a careful lookout for danger; and the degree of diligence to be exercised on either side is such as a prudent man would exercise under the circumstances of the case in endeavoring fairly to perform his duty. The charge of the judge was in substantial accordance with these views.

"The mistake of the defendant's counsel consists in seeking to impose upon the wagon too exclusively the duty of avoiding a collision, and to relieve the train too entirely from responsibility in the matter. Railway companies cannot expect this immunity so long as their tracks cross the highways of the country upon the same level. The people have the same right to travel on the ordinary highways as the railway companies have to run trains on the railroads."

In Flannelly v. Delaware & Hudson Co., 225 U. S. 597, 32 Sup. Ct. 783, 56 L. Ed. 1221, 44 L. R. A. (N. S.) 154, it is said:

"The law requires of one going upon or over a railroad crossing the exercise of such care for his own protection as a reasonably prudent person ordinarily would take in the same or like circumstances, including the use of his faculties of sight and hearing. And, generally speaking, whether such care has been exercised is a question of fact for the jury, especially if the evidence be conflicting or such that different inferences reasonably may be drawn from it."

In Grand Trunk Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485, it is said:

"The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court."

[4] In this case there was no evidence that plaintiff's husband did not look and listen, and the presumption is he did. Continental Improvement Co. v. Stead, supra; Texas & Pacific Railway Co. v. Gentry, 163 U. S. 353, 16 Sup. Ct. 1104, 41 L. Ed. 186; Baltimore & Potomac R. R. Co. v. Landrigan, 191 U. S. 461, 24 Sup. Ct. 137, 48 L. Ed. 262. Defendant relies on the following cases decided by the Supreme Court: Railroad Co. v. Houston, 95 U. S. 697, 24 L. Ed. 542; Schofield v. Chicago, M. & St. Paul Railway Co., 114 U. S. 615, 5 Sup. Ct. 1125, 29 L. Ed. 224; Northern Pacific R. R. Co. v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014—in all of which it was held there could be no recovery.

In the Houston Case, the party killed was a trespasser on the right of way; it was bright moonlight, and the headlight of the engine was

burning and could be seen for a distance of three-fourths of a mile. In the Schofield Case, plaintiff had an unobstructed view from a point within 600 feet of the crossing. In the Freeman Case, the uncontradicted testimony of three witnesses was that the person killed at the crossing did not look, and that the train was running at a speed not exceeding 20 miles an hour.

The opinion of this court in Lancaster v. Foster, 260 Fed. 5, 171 C. C. A. 41, is also relied on by the defendant. In that case the accident happened in the daytime, and the train was in plain view for more than a mile. It is evident from the statement of facts that the deceased could have seen the train if he had looked, on account of which the inference was drawn that he did not look, but was engrossed in attempting to stop an interurban car.

We are also cited to the opinion of Judge Shelby, delivered in denying a motion for a new trial, while acting for the District Judge, in the case of Gipson v. Southern Railway Co. (C. C.) 140 Fed. 410. It needs but slight attention to the facts in that case to discover that Gipson knew the train was coming and deliberately attempted to cross the track ahead of it.

[5] In the instant case, the train was not in sight until it rounded the curve 2,145 feet north of the Drakie road crossing. The testimony warrants the conclusion that it was running at the rate of 50 miles per hour, or over 70 feet per second, because that rate of speed was permissible in order to make up for lost time. At that rate of speed the train would have been upon the crossing in 30 seconds from the time one at the crossing could have seen it. But plaintiff's husband was not at the crossing when the train came in sight of it. In order for him to see it as he approached the track, it was necessary for him to get within 20 feet of the crossing, and then the train would have been visible only as far as the station shed, 200 feet away; and this distance would have been covered in less than three seconds.

Under the state of facts shown by the evidence, whatever precautions ordinary care and diligence would suggest to the railroad company should have been observed and exercised. Whether the whistle was sounded is in dispute, but it is admitted that the bell was not rung. To ring the bell would have been an easy and prudent thing to do while passing through this village at a rate of speed that was high, according even to defendant's witnesses. Without some warning, considered in connection with the various obstructions, we are of opinion that it cannot safely be asserted that plaintiff's husband would have been able fully to protect himself by looking and listening, and that reasonable men might well differ as to whether he was in the exercise of ordinary and reasonable care; and that, therefore, the case was properly submitted to the jury.

The judgment is affirmed.