# WARNER *v.* BALTIMORE AND OHIO RAILROAD COMPANY.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 82.   Argued November 1, 2, 1897. — Decided November 29, 1897.

This was an action to recover for the death of plaintiff's testator, caused by a train striking him while crossing the track of defendant's road. The results of the evidence at the trial are condensed in the statement of the case, below, which cannot well be abridged. Upon them the court below ordered a verdict and judgment in defendant's favor. *Held,* that the peremptory instruction by the trial court and the affirmance of its action by the appellate court manifestly proceeded not on the theory that, as a matter of law, there was no negligence on the part of the defendant, but that the proof of contributory negligence on the part of the plaintiff was so conclusive as to leave no question for the consideration of the jury;

but that apart from any question which might have arisen from the proof as an entirety, and apart from the conflicting evidence as to the failure to give warning or proper signals, in the light of the ruling in *Chicago, Milwaukee &c. Railway* v. *Lowell*, 151 U. S. 209, it is obvious there was no room reasonably to claim that it should have been determined, as matter of law, that the railroad company had not been negligent.

The rule of the defendant company that "when one passenger train is standing at a station receiving or discharging passengers on double track no other train, either passenger or freight, will attempt to run past until the passenger train at the station has moved on or signal is given by the conductor of the standing train for them to come ahead, and the whistle must not be sounded while passing a passenger train on double track or sidings unless it is absolutely necessary," is a proper one, and applies to this case.

The duty owing by a railroad company to a passenger, actually or constructively in its care, is of such a character that the rules of law regulating the conduct of a traveller upon the highway when about to cross and the trespasser who ventures upon the tracks of a railroad company are not a proper criterion by which to determine whether or not a passenger who sustains injury in going upon the tracks of the railroad was guilty of contributory negligence.

A railroad company owes to one standing towards it in the relation of a passenger a different and higher degree of care from that which is due to mere trespassers or strangers, and it is conversely equally true that the passenger, under given conditions, has a right to rely upon the exercise by the road of care; and the question of whether or not he is negligent, under all circumstances, must be determined on due consideration of the obligations of both the company and the passenger.

When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determining the matter is for the jury.

THIS action was begun in the Supreme Court of the District of Columbia to recover damages for the killing of the plaintiff's intestate on June 22, 1893, at a suburban station of the city of Washington, located on the line of the defendant's road, known as University station.

It appeared from the evidence that at the station referred to the company operated a double track road, the tracks running substantially from north to south, the southerly direction leading to Washington and the northerly direction leading away from that city. The two tracks being side by side, one consequently lay to the west and the other to the east. The distance between the rails of each track was four feet eight

and a half inches, while the distance between the east and west tracks, respectively, was seven feet five inches.

At the place in question the station building was on the outer side of the west track, and contained a waiting room, a ticket office and the other conveniences of a passenger station. Fronting the station building and beside the track was the necessary platform to enable passengers to enter or descend from any train which might there stop. In the space between the east and west track there was no platform or other facility for passengers either to enter or leave the train, but on the other side of the east track there was a platform which was uncovered, but which was manifestly constructed for the purpose of facilitating the entry into or departure from any train which might stop at that point on the east track. These east and west platforms were connected by a plank crossing, which came opposite the centre of the station building.

There was a road crossing adjoining the station, and the travel was such as seems to have necessitated the use of crossing gates and the employment by the railroad company of a gate watchman. On the east side of the track there was also a settlement known as Brookland, and several of the witnesses who testified at the trial lived in the immediate vicinity of the station in question.

Whilst, as we have said, the substantial direction of the two tracks was north and south, nevertheless the proof showed that in the southward direction of the tracks, that is, towards Washington, the tracks were not perfectly straight, but were somewhat curved. As to the foregoing facts, there seems from the bill of exceptions to have been no conflict of proof.

There was proof tending to show that on the morning of the accident, at about twenty minutes past seven o'clock, the deceased alighted at University station from a local train bound to Washington. One of the stopping points of such train on the way to University station was a small station known as Forest Glen. After attending to some business in the neighborhood of University station, Collis returned to that station at about half-past eight o'clock on the same morning. He was then seen engaged in conversation with several persons

in or about the station building, which we have already described. There was a local train bound out from Washington, that is, going north, which was scheduled to stop at Forest Glen, and which was due to arrive at University station at *nine* minutes past nine o'clock, whilst there was an express train bound to Washington scheduled to pass the same station at *eleven* minutes past nine. The proof tended to show that the local train arrived at University station a few minutes late, and that either as it was stopping at the east platform or after it had actually stopped there Collis, who had in his possession a return-trip ticket from University station to Forest Glen, hurriedly went from under the arch of the station building in the direction of the local train. There was conflict in the proof as to whether, when Collis started, the local train had actually stopped on the east track or was slowing-down. There was also conflict in the evidence as to where Collis was when he started to the local train. The engineer of the express train testified "that after he got by the whistling post he saw Mr. Collis standing on the platform, but did not think that Collis would go over," and that it was not until Collis started across that he gave the danger signals; whereas another witness for the defence testified that Collis was sitting behind the arch of the station building when the local train arrived, and as it did so he went around the station building " to cross the track and get on his train," and "started straight across, did not stop at all and did not look in either direction." There was conflict also in the proof as to whether, in crossing towards the train, Collis went on the crosswalk connecting the two platforms, or diagonally upon the track away from the board walk and bearing towards the local train. Some of the witnesses testified that as he started toward the local train, not being opposite a platform by which to enter a coach, he obliquely directed his course towards the south as though to reach the platform and steps of a car on the local train, whilst other testimony tended to show that as he came out from under the arch and around the building he pursued a course directly across the track towards the local train.

The testimony moreover established that whilst Collis was making the movement towards the local train, in one or the other of the modes above described, the express came down the west track, past the station, running by the standing or stopping local train at the rate of between forty and forty-five miles an hour, and that by the train so moving Collis was struck and killed. The proof further tended to show that there was a clear view of the track going north from the station for a considerable distance, and that there was a whistling post for the station located fifteen or sixteen hundred feet beyond the station. There was no proof, however, showing that a view of the rapidly moving express train was possible from under the archway of the station from which some of the proof tended to show Collis came on his way towards the local train.

There was conflict in the testimony as to whether the express train whistled at the whistling post. Some of the witnesses testified that the only signal given as the train approached the station was the danger signal which was sounded when the engine was only fifty or sixty feet from the point where Collis was killed; while others testified that a long blast for the station was sounded at the whistling post. There was no proof tending to show that any notice or warning, by sign or otherwise, was given, of the danger which might be incurred if a passenger attempted to cross the west track in order to board a train on the east track, nor was there any proof offered tending to show that any warning or notice was given, either by the ticket agent, gate watchman or the employés of the local train, to passengers actually in waiting at the station, of the fact that the express train was due under its schedule, and, if on time, would pass the station without stopping, and almost simultaneously with the arrival of the local train.

It was proven that a book of rules issued by the company to its employés contained the following:

"No. 441. When one passenger train is standing at a station receiving or discharging passengers on double track no other train, either passenger or freight, will attempt to

run past until the passenger train at the station has moved on or signal is given by the conductor of the standing train for them to come ahead, and the whistle must not be sounded while passing a passenger train on double track or sidings unless it is absolutely necessary."

While the engineer of the express train testified that coming down towards University station he saw the local train and did not know whether it was moving or had stopped entirely, or was going to stop or not, he also admitted that he knew of the existence of Rule 441, but that "it was impossible to carry out the rule and make schedule time, and that the rule never was carried out."

At the close of the evidence for both parties the defendant requested a peremptory instruction in his favor, which the court gave, and by reason thereof the jury returned a verdict in favor of the defendant. From the judgment thereupon entered an appeal was taken to the Court of Appeals of the District of Columbia, where the judgment was affirmed. The case was then brought into this court by writ of error.

*Mr. Rodolphe Claughton* for plaintiff in error.

*Mr. G. E. Hamilton* for defendant in error. *Mr. M. J. Colbert* was on his brief.

Mr. Justice White, after stating the case, delivered the opinion of the court.

The peremptory instruction by the trial court and the affirmance of its action by the appellate court manifestly proceeded not on the theory that, as a matter of law, there was no negligence on the part of the defendant, but that the proof of contributory negligence on the part of the plaintiff was so conclusive as to leave no question for the consideration of the jury. Indeed, apart from any question which may have arisen from the proof as an entirety, and apart from the conflicting evidence as to the failure to give warning or proper signals, in the light of the ruling in *Chicago, Mil-*

*waukee &c. Railway* v. *Lowell*, 151 U. S. 209, it is obvious there was no room reasonably to claim that it should have been determined, as matter of law, that the railroad company had not been negligent. In the *Lowell case*, as in this, it was shown that a rule of the company, applicable where double tracks were operated, prohibited any train, either passenger or freight, from attempting to run past a passenger train standing at a station for the purpose of receiving or discharging passengers, until the passenger train at the station had moved on, or signal was given by the conductor of the standing train for the other train to come ahead. Speaking of such a rule, and after declaring that it could not be seriously contended that the defendant was free from fault in failing to stop its train, in compliance with its own rule, the court said (page 217): "In view of the frequency of accidents occurring to passengers crossing one track at a station, after alighting from a train standing upon another track, the rule is doubtless a proper one, and if it had been observed on that evening this accident would probably not have occurred."

The cogency of this language applies with equal force to the state of facts disclosed in this record, where the station in which was the waiting room was so situated, and the trains of the company so operated, that passengers obliged to board a train which was to arrive and depart on the east track could not do so without crossing the west track, over which a train bound in an opposite direction was momentarily to arrive. If the stopping of a train at a station to put off a passenger, as held in the *Lowell case*, may, under certain circumstances, justify the passenger in presuming that it is safe for him to alight from the train away from a platform, and does not impose upon him in so doing the same degree of care and caution as would be imposed on him if he were not a passenger, it follows, necessarily, that the same rule would apply to one waiting at a station to take a train and who approaches the train he is to take when it arrives at the station.

The learned court below, in affirming the judgment of the trial court, principally rested its conclusion on the ruling in *Elliott* v. *Chicago, Milwaukee & St. Paul Railway*, 150 U. S.

245, and the authorities in that case referred to. But there the question for determination was the negligence of one not a passenger.

The duty owing by a railroad company to a passenger, actually or constructively in its care, is of such a character that the rules of law regulating the conduct of a traveller upon the highway when about to cross and the trespasser who ventures upon the tracks of a railroad company are not a proper criterion by which to determine whether or not a passenger who sustains injury in going upon the tracks of the railroad was guilty of contributory negligence. A railroad company owes to one standing towards it in the relation of a passenger a different and higher degree of care from that which is due to mere trespassers or strangers, and it is conversely equally true that the passenger, under given conditions, has a right to rely upon the exercise by the road of care; and the question of whether or not he is negligent, under all circumstances, must be determined on due consideration of the obligations of both the company and the passenger. As said by the Court of Appeals of New York in *Terry* v. *Jewett*, 78 N. Y. 338, 344:

"There is a difference between the care and caution demanded in crossing a railroad track on a highway and in crossing while at a depot of a railroad company to reach the cars. No absolute rule can be laid down to govern the passenger in the latter case under all circumstances. While a passenger has a right to pass from the depot to the train on which such passenger intends to travel, and the company should furnish reasonable and adequate protection against accident in the enjoyment of this privilege, the passenger is bound to exercise proper care, prudence and caution in avoiding danger. The degree of care and caution must be governed in all cases by the extent of the peril to be encountered and the circumstances attending the exposure."

And in the case before the court it was held to be a question for the jury, under all the circumstances, whether the plaintiff was chargeable with contributory negligence.

The doctrine of the *Terry* case was approved in *Brassell* v. *New York Central &c. Railroad*, 84 N. Y. 246, and is sup-

ported by the following authorities: *Atchison &c. Railroad* v. *Shean*, 18 Colorado, 368; *Phil. Wil. & Balt. Railroad* v. *Anderson*, 72 Maryland, 519, 530; *Balt. & Ohio Railroad* v. *State*, 60 Maryland, 449, 463, 465; *Pennsylvania Railroad* v. *White*, 88 Penn. St. 327, 333, 334; *Jewett* v. *Klein*, 27 N. J. Eq. 550; *Wheelock* v. *Boston & Albany Railroad*, 105 Mass. 203.

To concede the rule, and, in a given case, to take a passenger beyond its protection by holding that one who goes in proper time to a station for the purpose of taking a train over the road and has a ticket for travel thereon, is not to be considered as a passenger until he has manifested by some outward act his intention to board a train and become a passenger, is to admit the rule on the one hand and on the other to deny it. It is also clear that to say that one who goes to a station to take a train must exercise the same circumspection and care as a traveller on the highway or a trespasser, unless by some implication the corporation has invited the person to deport himself as a passenger, and that such implication must be determined as matter of law by the court and not of fact by the jury, is, in effect, under the form of a qualification, to destroy the rule.

The situation of the tracks, the location of the station building and the waiting room, the coming of the local train and its stopping to receive passengers in a position which required the latter to cross a track in order to reach the train, involved necessarily a condition of things, which under one view of the testimony constituted an implied invitation to the passenger to follow the only course which he could have followed in order to take the train, that is, to cross the track to the waiting train. Whilst it is true, as was said in *Terry* v. *Jewett, supra*, that such implied invitation would not absolve a passenger from the duty to exercise care and caution in avoiding danger, nevertheless it certainly would justify him in assuming that, in holding out the invitation to board the train, the corporation had not so arranged its business as to expose him to the hazard of danger to life and limb unless he exercised the very highest degree of care and caution.

The railroad, under such circumstances, in giving the invitation, must necessarily be presumed to have taken into view the state of mind and of conduct which would be engendered by the invitation, and the passenger, on the other hand, would have a right to presume that in giving the invitation the railroad itself had arranged for the operation of its trains with proper care. The doctrine finds a very clear expression in a passage in the opinion in the *Terry case*, already referred to, where it was said (p. 342):

"It may be assumed that a railroad corporation, in the exercise of ordinary care, so regulates the running of its trains that the road is free from interruption or obstruction where passenger trains stop at a station to receive and deliver passengers. Any other system would be dangerous to human life, and impose great risks upon those who might have occasion to travel on the railroad."

When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. *Grand Trunk Railway* v. *Ives*, 144 U. S. 408, 417; *Baltimore & Ohio Railroad* v. *Griffith*, 159 U. S. 603, 611; *Texas & Pacific Railway* v. *Gentry*, 163 U. S. 353, 368. A like doctrine was thus expressed by the Supreme Court of Pennsylvania in *Pennsylvania Railroad Co.* v. *White*, 88 Penn. St. 327, 333, a case in many respects analogous to the present one:

"Negligence has been defined to be 'the absence of care according to the circumstances,' and is always a question for the jury when there is reasonable doubt as to the facts, or as to the inferences to be drawn from them. When the measure of duty is ordinary and reasonable care, and the degree of care varies according to circumstances, the question of negligence is necessarily for the jury."

We think the case presented by the record is not one where the facts inferable from the evidence were such that all reasonable men would, of necessity, draw the same conclusion from them, and the question of negligence was not, therefore, one of law for the court.

It is, therefore, ordered that the judgment be

*Reversed, and the case remanded, with directions to grant a new trial, and for further proceedings in conformity to law.*

Mr. Justice Brewer is of the opinion that the deceased was guilty of contributory negligence.