ILLINOIS CENTRAL RAILROAD COMPANY v. JULIA H. DANIELS.

[50 South. 721.]

1. RAILROADS. *Intending passengers. Protection of. Contributory negligence.*

A person seasonably approaching a railroad train to become a passenger may assume that the carrier has exercised the highest degree of care in providing for his safety, and whether such a person injured by the failure of the carrier to fulfill its duty, is guilty of contributory negligence depends on the circumstances surrounding him at the time.

2. SAME. *Same. Stations must be safe. Approaches.*

Railroad stations and the approaches thereto must be made safe for persons seasonably coming there to take a train.

3. SAME. *Same. Failure to look and listen. When not per se contributory negligence.*

It is not negligence *per se* for a person to fail to stop, look, and listen while crossing a track at a depot to take passage on a train scheduled to stop there at the very time he crosses.

4. SAME. *Same. Train time. Another train on parallel track.*

A person, while going to the depot to take passage on a train scheduled to stop there at the very instant, may assume that a train on a parallel track will not be running in excess of the maximum speed limit, and that the carrier will not run its trains over the parallel track in such a way as to subject him to unusual danger.

5. SAME. *Same. Same. Ordinary care.*

Whether a passenger, killed while running to a depot to catch a passenger train by being struck by a rapidly moving freight train arriving on a parallel track at the depot at the instant of the arrival of the passenger train, was guilty of contributory negligence, must be determined from the standpoint of whether he exercised ordinary precaution at the time, in view of the circumstances of the situation.

6. SAME. *Same. Same. Concrete case. Question for jury.*

Where a railroad company so arranged its schedule that a through freight train, running at the rate of from twenty-five to forty-five

miles an hour, reached the depot the very instant a passenger train was scheduled to arrive there, and a person, desiring to board the passenger train, on hearing its whistle, ran toward the depot without stopping, looking, or listening before stepping on the track on which the freight train ran, and the freight train struck him, although others who saw his danger undertook to warn him but failed to make him understand, the question of his contributory negligence was for the jury.

7. SAME. *Speed in municipalities.  Code* 1906, § 4043.

Code 1906, § 4043, regulating speed of railroad trains in municipalities, applied.

FROM the circuit court of Lincoln county.

HON. MOYSE H. WILKINSON, Judge.

Mrs. Daniels, appellee, was plaintiff in the court below; the railroad company, appellant, was defendant there. From a judgment in plaintiff's favor for $20,000 the defendant appealed to the supreme court. The facts are sufficiently stated in the opinion of the court.

*Mayes & Longstreet,* for appellant.

[The reporter has been unable to find the brief of counsel for appellant, hence no synopsis of it is given.]

*H. Cassedy, J. W. Cassedy,* and *J. N. Yawn,* for appellee.

The accident was at a passenger depot. The deceased was a passenger. In these facts, it is obvious that the case is not one of the ordinary crossing cases wherein the accident happened at an ordinary highway crossing. There are other and more important principles involved. The railroad company owed to its passengers other and greater duties than it did to mere travelers at highway crossings. The very presence of railroad tracks across a highway warns the traveler of danger to be anticipated; but the depot and the depot grounds and ways, even though one of the ways may be a highway across the tracks, invite the passenger and assure him that the company has so arranged its business and the running of its trains

as to insure his safety, and the tracks, in themselves, lose this element of warning.

The first proposition, therefore, in the nature of things, and the principal point in the case, is the doctrine of "Stop, look, and listen," which doctrine has been applied to and the duty devolved upon the traveler who crosses a railroad track upon a public highway, or other way. It is not enforced in all of its rigidity and severity in the state courts of Mississippi as it is in the federal courts and in some of the other state courts. The rule that the traveler must "stop, look, and listen" is treated by Thompson in his latest commentaries on the law of Negligence, and it is stated in section 1644 that the traveler must stop twice, look and listen several times, etc. This rule has been invoked in Mississippi on numerous occasions, and the natural imprudence of human kind has been recognized by this court in *Vicksburg, etc., R. Co. v. McGowan*, 62 Miss. 698, wherein the court says: "So people are in the habit of crossing and going along railroad tracks, oftentimes most imprudently. The statute prohibiting rapid running in cities, towns, and villages, was designed to protect life and property because of the known imprudence of many who need protection against themselves."

The most of the cases in this state have been with reference to street crossings; some with reference to country highway crossings and some with reference to other crossings customarily used by pedestrians and vehicles. In this case, we are to add, for the first time, another class of crossings to the negligence law of Mississippi, viz: the crossing to the depot of a railroad company.

"One crossing a railroad track who can see, must see at his peril." *Murdock v. Yazoo, etc., R. Co.*, 77 Miss. 487; *Illinois, etc., R. Co. v. McLeod*, 78 Miss. 334.

"It is not necessary to stop, look, *and* listen, but it is necessary to do one of the three things." *Jackson v. Mobile, etc., R. Co.*, 89 Miss. 32.

The criterion is whether the injured party observed due care under the circumstances of his situation. *Vicksburg, etc., R. Co. v. McGowan,* 62 Miss. 682. To the same effect, *Mobile, etc., R. Co. v. Stroud,* 64 Miss. 784; *Louisville, etc., R. Co. v. French,* 69 Miss. 121; *Jobe v Memphis, etc., R. Co.,* 71 Miss. 734; *Winterton v. Illinois, etc., R. Co.,* 73 Miss. 831; *Pugh v. Illinois, etc., R. Co.,* 23 South. 326; *New Orleans, etc., R. Co. v. Brooks,* 85 Miss. 269; *Alabama, etc., R. Co. v. Lowe,* 73 Miss. 203.

The doctrine of "stop, look, and listen" was fairly presented in the case of *Louisville, etc., R. Co. v. Crominarity,* 86 Miss. 464, in which the court says: "We decline to adopt any such rigid rule. What constitutes negligence must depend always upon the surrounding conditions and the attendant circumstances of the particular instance. No hard and fast rule of action can be prescribed which will make the same course of conduct under any and all circumstances either wise or unwise, cautious or reckless." This case is reaffirmed in the case of *Hopson v. Kansas City, etc., R. Co.,* 87 Miss. 789.

All of the foregoing cases referred to street and highway crossings.

In further illustration of the modified rule, refer to the cases of *Stevens v. Yazoo, etc., R. Co.,* 81 Miss. 195, and *Allen v. Yazoo, etc., R. Co.,* 88 Miss. 25.

The hard and fast rule that the traveler must "stop, look, *and* listen" or be guilty *per se* of contributory negligence, does not exist in this state. The true rule is announced in the *Crominarity case* that he must "use that degree of care and caution which is rendered necessary by a reasonable regard for his safety under the peculiar circumstances and conditions by which he is at the time confronted."

At highway crossings, the duty of the railroad company seems to be no greater towards the individual than the duty of the individual towards the railroad company. In these

.cases the railroad company's duty extends only to the observ-
ance of statutory requirements as to ringing the bell, blowing
the whistle, etc.    When a railroad company establishes its depot,
.and waiting rooms it invites the public to come and use the ways
provided or suffered to be used, and its duty to protect the indi-
·vidual from danger grows greater as the danger increases.    "It
is under strong obligations to exercise the utmost care and cau-
tion in the movement of its trains and the handling of its
cars so as to prevent injuries to persons going to and from its
offices."  *Louisville, etc., R. Co. v. Hirsch,* 69 Miss. 126;
*Atchison, etc., R. Co. v. McElroy,* 76 Kan. 271, 91 Pac. 785,
.123 Am. St. Rep. 134 and note; Thompson on Negligence,
§ 1844 and note 25; Ib. §§ 2886, 2988, 2989.

A person is not guilty of contributory negligence in failing
to "stop, look, and listen" in passing from the depot to a train
where he was obliged to cross an intervening track.    *Jewett
·v. Klein,* 27 N. J. Eq. 550; *Terry v. Jewett,* 78 N. Y. 338;
*Besecker v. Delaware, etc., R. Co.,* 220 Pa. 507, 123 Am. St.
Rep. 714.

The cases of *Jewett v Klein* and *Terry v. Jewett, supra,*
.seem to be the leading cases on the identical points at issue
in this case.    These cases are cited by the supreme court of the
United States when that court made the first advance in an-
·nouncing the same doctrine, and these cases are cited by nearly
every other state court dealing with the same question.    *War-
ner v. Baltimore, etc., R. Co.,* 168 U. S. 339, 42 L. Ed. 491;
*Chicago, etc., Ry. v. Lowell,* 151 U. S. 209; *Chesapeake, etc.,
Ry. Co. v. King,* 40 C. C. A. 432; *Graven v. McLeod,* 35 C.
·C. A. 47.

A passenger is justified in assuming that the railroad com-
pany has exercised due care and so regulated its trains that
the road will be free from interruption or obstruction when
passenger trains stop at a station to receive and deliver pas-
·sengers, and the duty to stop, look, and listen is not required

of the passenger and contributory negligence cannot be predicated of a failure to do so. Authorities in United States courts, *supra,* and following state decisions: *Philadelphia, etc., Ry. Co. v. Anderson* (Md.), 8 L. R. A. 673; *Parsons v. New York, etc., R. Co.* (N. Y.), 3 L. R. A. 683; *Atchison, etc., R. Co. v. Shean,* 18 Colo. 368, 20 L. R. A. 729; *Tubbs v. Michigan, etc., R. Co.,* 107 Mich. 108, 61 Am. St. Rep. 320; *Brassel v. New York, etc., R. Co.,* 84 N. Y. Rep. 241, 3 Am. & Eng. R. R. Cases, 380 and note; *Warren v. Flitchburg Ry. Co.,* 8 Allen, 227, 85 Am. Dec. 700; *Gaynor v. Old Colony R. Co.,* 100 Mass. 208, 97 Am. Dec. 96; *Barkley v. New York, etc., R. Co.* (N. Y.), 5 Am. Neg. Rep. 218; *Chicago, etc., Ry. Co. v. Kelly* (Ill.), 6 Am. Neg. Rep. 488; *Betts v. Lehigh Valley R. Co.,* 191 Pa. 575, 45 L. R. A. 261; *Atlantic City Ry. Co. v. Goodin,* 62 N. J. L. 394, 45 L. R. A. 671.

It is self evident that the railroad company would be guilty of negligence in running a train at a rapid speed past a station where another train is waiting to receive and discharge passengers. The following cases are illustrative: *Chicago, etc., R. Co. v. Ryan,* 62 Ill. App. 264; *Nichols v. Chesapeake, etc., R. Co.,* 2 S. W. 181; *Redding v. Cent. R. Co.,* 68 N. J. L. 641, 54 Atl. 431; *Gulf, etc., Ry. Co. v. Morgan,* 26 Tex. Civ. App. 378, 64 S. W. 688; *Birmingham Ry., etc., Co. v. Landrum* (Ala.), 45 South. 198; *Central of Georgia Ry. Co. v. Hyatt* (Ala.), 43 South. 867.

Where it appears that the circumstances were such that a person could not reasonably have expected the approach of a train at the time of his crossing the track, his failure to look and listen is not negligence as matter of law, but a question for the jury. *Fulmer v. Illinois, etc., R. Co.,* 68 Miss. 355; *Alabama, etc., Ry. Co. v. Summers,* 68 Miss. 566.

See also following cases from other states to the same effect wherein the rule is applied, and the matter submitted to the jury under a variety of circumstances: *Scott v. St. Louis,*

*etc., Ry.,* 70 Ark. 137; *Tiffin v. St. Louis, etc., Ry.,* 78 Ark. 55; *St. Louis, etc., Ry. Co. v. Tomlinson,* 69 Ark. 489; *Mixon v. Chicago, etc., R. Co.,* 84 Iowa, 332; *French v. Taunton Branch R. Co.,* 116 Mass. 537; *Baker v. Kansas City, etc., R. Co.,* 122 Mo. 523; *Bonnell v. Delaware, etc., R. Co.,* 39 N. J. L. 189; *Bowen v. New York, etc., R. Co.,* 89 Hun, 594, 35 N. Y. Supp. 540; *Bradley v. Ohio River Co.,* 126 N. C. 735; *Dougherty v. Chicago, etc., R. Co.* (S. D.), 104 N. W. 672; *International, etc., R. Co. v. Mitchell* (Tex.), 60 S. W. 996; *Ferguson v. Wisconsin, etc., R. Co.,* 63 Wis. 152.

The facts in the instant case are in no wise similar to the facts in the cases of *Illinois, etc., R. Co. v. Crockett,* 78 Miss. 407, and *Murdock v. Yazoo, etc., R. Co.* 77 Miss. 487; and *Jackson v. R. R. Co.,* 89 Miss. 32, cited by counsel for appellant. The instant case is more similar, in its facts, to the case of *Louisville, etc., Ry Co. v. Hirsch,* 69 Miss. 126. The instant case does not fall within that class of cases dealing with accidents at crossings of highways and streets, but comes within a class of its own and should be paired with the *Hirsch case.* This court should adopt the rule laid down in *Terry v. Jewett, supra,* followed by the supreme court of the United States, the circuit courts of appeals and the highest courts of a majority of the states; in fact by all of the states where the question has been fairly presented. The rule seems universal.

Argued orally by *J. W. Cassedy,* for appellee.

MAYES, J., delivered the opinion of the court.

In July, 1908, Mrs. Julia H. Daniels brought suit against the Illinois Central Railroad Company for the negligent killing of her husband on the 4th day of the same month. Her husband was killed in Boguechitto, an incorporated town, while going to the depot of the railroad company, intending to take passage on a passenger train which passed through the town

of Brookhaven, in which place deceased resided. Some time later the cause came on for trial, resulting in a verdict in favor of Mrs. Daniels for the sum of $20,000, and from this judgment the railroad company appeals. In the determination of this cause we do not deem it necessary to pursue all the various errors assigned by counsel for appellant, since under our view many of them are not involved in the decision of the case. There is no serious complaint as to the amount of the verdict; it seeming to be virtually conceded by the appellant that, if Mrs. Daniels is entitled to recover at all, the amount is not excessive. We shall not go at length into a statement of the facts, but a short review of them is necessary in order that the case may be thoroughly understood.

The case made by the record is substantially as follows, viz.: On the 4th day of July, 1908, the deceased purchased a round-trip ticket over the Illinois Central Railroad from Brookhaven to Boguechitto, and about 2 o'clock in the afternoon of the same day boarded a south-bound passenger train on appellant's line of railway, and proceeded to Boguechitto. The above town is a regular passenger station on the line of appellant's railway where all local passenger trains stop. Being a town within the meaning of Code 1906, § 4043, it is unlawful under the statute for any train to run through the same at a greater rate of speed than six miles an hour, the penalty for a violation of this section being that any railroad company which violates same shall be liable for any damage, or injury, which may be sustained by any one, whilst the train is running through the town at a greater rate than the statute allows. It is thus seen that, if this statute has any bearing on the question of the negligent act of the railroad in this case, the facts so circumstanced it as to make it available to the party bringing this suit. After reaching Boguechitto, the deceased remained in the town until about 8:30 p. m., at which time he expected to take a local passenger train over the appellant's line back to his home. A local pas-

senger train going north to Brookhaven was scheduled to stop there at that hour. It appears that appellant's line is double tracked at Boguechitto; trains bound north traveling over the east track, and trains bound south traveling over the west track. To the north of the depot in Boguechitto there is a cut of twenty or thirty feet, by which the view in that direction is obstructed, unless one be actually on the track and looking north. The cut does not extend to the south of the depot, and one, though not on the track, can obtain an unobstructed view looking south. The deceased was on the west side, and a train coming into Boguechitto from the south may be seen for quite a distance in that direction by a person so situated, while a view could not be obtained by the same person looking north. As the time approached for the arrival of the train on which deceased intended to take passage for his return trip to Brookhaven, he was standing at the store of a Mr. Zwirm on the west side of the railway and about one hundred and sixty feet from the depot, and at a point where he could not see a train approaching Boguechitto from the north and running south, but where he could see the passenger train then approaching the depot from the south. When the passenger train coming from the south blew its whistle for the station, deceased left Zwirm's store, and proceeded rapidly towards the depot, having his return trip ticket in his pocket, and intending to become a passenger on that train to Brookhaven. In order to reach the passenger train, it was necessary for deceased to cross the west track of the railroad, on which ran all south-bound trains, in order to get across on the east track, on which east track was the north-bound passenger train. At the very instant that the passenger train was approaching the Boguechitto depot from the south on the east track, a freight train was also approaching the depot from the north on a parallel track on the west, running at the furious and reckless speed of from twenty-five to forty-five miles per hour. Thus it is that the railroad company had so arranged its schedule as that

at the very instant a passenger train was scheduled to stop at that depot, for the purpose of loading and unloading its human freight another, a through freight, train was scheduled to pass on a parallel track at the reckless speed of from twenty-five to forty-five miles per hour. Railroads are bound by those things which are matters of common knowledge, just like others, when the question at issue is one of negligence. It is common knowledge that, upon the approach of a passenger train, persons intending to become passengers are hurrying from various direction to take the train, feeling secure in the belief that the railroad company will fulfill its duty to provide for their safety at that time, and not negligently allow to be done those things which virtually amount to the setting of a deathtrap. Passengers do rely, and under the law have a right to rely and act, upon the duty of the railroad company to exercise the highest degree of care in providing for their safety in going to take the train, in alighting from it, and while actually en route; and whether or not a passenger who is injured by the failure of the company to fulfill this duty is guilty of contributory negligence precluding a recovery for the injury always depends on the facts and circumstances surrounding him at the time. It is common knowledge that many parties contemplating a business or pleasure trip linger until forced to the depot; business men to give the last direction about business; friends to say the last good-bye; and railroads in providing for the safety of their passengers must consider all these things. Thus, the deceased, standing at the store of Zwirm one hundred and sixty feet from the depot, heard the passenger train whistle, and ran towards the depot for the purpose of catching this train, relying on the railroad at such time and such place to provide for his safety; not stopping, looking, or listening before going upon the west track, but, utterly unconscious of his danger, was caught by the south-bound freight train on the parallel track, almost the instant that he reached the same,

and was hurled to his death.    Can the company which is so care-
less of the safety of its passengers as to arrange for a schedule
that places a through freight train, running at the rate of from
twenty-five to forty-five miles an hour, at the depot at the very
instant that a passenger train is scheduled to stop, find any
rule of law that will absolve it from liability under these cir-
cumstances ?    It is attempted to be shown that one or two per-
sons, seeing the danger of deceased, undertook to warn him of
same and that he would not heed them, but it is manifest that
the deceased did not understand them, and did not understand
that they were trying to call his attention to the approaching
freight train.    It is again suggested that the deceased was
drunken to some extent, but, even if this be so, it is certain that
this was not the influential cause of his death.

The particular case presented by this record is not one which
this court has been heretofore called on to decide.    It is but
fair to state that it can hardly be doubted, under the facts of
this case, that deceased failed to stop, look, or listen before
going upon the track when he met his death, and it may also
be stated that the facts show that, if he had stopped or looked,
it would have averted the accident, as in either case he would
have discovered the approaching freight train.    It is manifest,
however, that deceased did not know of the danger that threat-
ened from the approaching freight train and was not therefore
taking his chances of successful escape from known risk.    It is
with these facts conceded that we shall discuss this case.    While
it is unquestionably true that even a passenger is not absolved
from all care, it is equally true that it is the duty of the rail-
road company to exercise the highest degree of care in pro-
viding for the safety of a passenger going to the depot for the
purpose of boarding its trains.    Therefore, as to what consti-
tutes negligence on the part of a passenger must depend upon
the facts and circumstances at the time of the injury.    This
duty of the railroad company is so imperative at the very time

that a passenger train is scheduled to arrive that it justifies a passenger in assuming that this high duty will be faithfully performed. The duty of the company to protect its passengers is so imperative and may be so relied on as not to make an act done by a passenger negligent, although it might be negligence in one not standing in the relation of passenger to the company. Arising out of this duty on the part of the company to its passengers, and this relation on the part of the passenger to the railroad company, there has grown up an important exception to what is familiarly known as the stop, look, and listen doctrine. A passenger has an invitation to come to the place of the stoppage of the trains, and, being so invited, that place must be made safe for him. Let it be remembered that in this case, it was not twenty minutes before the train was due to arrive that deceased went upon the track, but it was at the very instant of the arrival of his train, and at a time above all others when the duty of the company to make the way safe for him was at its highest.

In the case of *Atchison, Topeka & Santa Fe R. R. Co. v. Shean,* 18 Colo. 368, 33 Pac. 108, 20 L. R. A. 729, the facts showed that Thomas Shean, deceased, was a passenger on appellant's cars. While on the train as a passenger, the train arrived at a little station where it was customary for the railroad company to allow its passengers to get their meals. The train on which Shean was a passenger was running in two sections, and Shean was on the first. The eating house was on the opposite side of the track from that on which the train bearing Shean stopped, and, in order to reach the eating house, it was necessary for Shean to cross over the track. While passing diagonally over the track, the second section came in on another track, running at a rate of from six to ten miles per hour, and Shean was killed. It was shown that deceased did not stop, look, or listen before crossing the track when he was killed, but, if he had looked, he could have seen the train that

killed him.    It was contended, under these circumstances, that
the railroad company was not liable because of the contribu-
tory negligence of the deceased, but the court sustained the
liability of the company, and said: "It is settled that a pas-
senger on a railroad, while passing from the cars to the depot
is not required to exercise that degree of care in crossing a
railroad track as is imposed upon other persons, and that he
has the right to assume that the company will discharge its
duty in making the way safe; and, relying on this assumption,
may neglect precautions that are ordinarily imposed upon a
person not holding that relation; and this distinction is to be
taken into consideration in determining the propriety of his
conduct.    Under all the facts shown in evidence and the cir-
cumstances surrounding the accident, whether the person in-
jured was guilty of contributory negligence at the time is a
question within the province of the jury to decide, and one
that the court cannot rightfully take from them."    In the case
of *Pennsylvania Company v. Nellie Keane, Adm'r,* 41 Ill. App.
317, it was shown that the party killed rushed out of a little
station near Thirty-Seventh street in Chicago for the purpose
of taking a train on appellant's line.    It was about 6 o'clock
in the morning, and dark and rainy.    In so doing it was neces-
sary to cross a parallel track of the company's line upon which
was running another train of the same company at a rate of
speed variously estimated at from ten to twenty miles an hour,
and this train killed the party for whose death the suit for
damages was instituted.    It was not shown that deceased stop-
ped, looked, or listened before going upon the parallel track,
and the court said: "It is insisted by appellant that the de-
ceased failed to look out or watch for the train coming from
the south, and that this was such negligence upon his part as
will preclude a recovery in this case.    Undoubtedly, it is ordin-
arily the duty of a person about to cross a railroad track to
watch for approaching trains; but a person about to take a

train standing at a station waiting to receive passengers, and one alighting from a train that has just arrived, have a right to presume that the trains will be so run and the road so operated that such track may be passed in safety. A passenger under such circumstances is justified in assuming that the company has exercised such care and so regulated its trains that the road will be free and safe for him to pass over."

In the case of *Warner v. B. & O. R. R. Co.,* 168 U. S. 346, 18 Sup. Ct. 70, 42 L. Ed. 491, it is said: "The duty owing by a railroad company to a passenger, actually or constructively in its care, is of such a character that the rules of law regulating the conduct of a traveler upon the highway when about to cross and the trespasser who ventures upon the tracks of a railroad company are not a proper criterion by which to determine whether or not a passenger who sustains injury in going upon the track of the railroad was guilty of contributory negligence. A railroad company owes to one standing towards it in the relation of a passenger, a different and higher degree of care from that which is due to mere trespassers or strangers, and it is conversely equally true that the passenger under given conditions has a right to rely upon the exercise by the road of care, and the question of whether or not he is negligent under all circumstances must be determined on due consideration of the obligations of both the company and the passenger. * * * Whilst it is true, as was said in *Terry v. Jewett, supra* (78 N. Y. 338), that such implied invitation would not absolve a passenger from the duty to exercise care and caution in avoiding danger, nevertheless it certainly would justify him in assuming that in holding out the invitation to board the train the corporation had not so arranged its business as to expose him to the hazard of danger to life and limb unless he exercised the very highest degree of care and caution. The railroad under such circumstances, in giving the invitation, must necessarily be presumed to have taken into view the state

of mind and of conduct which would be engendered by the invitation, and the passenger, on the other hand, would have a right to presume that in giving the invitation the railroad itself had arranged for the operation of its trains with proper care. The doctrine finds a very clear expression in a passage in the opinion in the *Terry case,* already referred to, where it was said (page 342): "It may be assumed that a railroad corporation, in the exercise of ordinary care, so regulates the running of its trains that the road is free from interruption or obstruction where passenger trains stop at a station to receive and deliver passengers. Any other system would be dangerous to human life, and impose great risks upon those who might have occasion to travel on the railroad."

In the case of *Chicago, R. I. & P. Ry. Co. v. Stepp,* 164 Fed. 792, 90 C. C. A. 438, the court said: "It is now the settled rule of the federal courts that passengers using station premises for the purpose of taking or leaving trains have a right to assume that the place is one of safety, and to act upon that assumption. While they are not absolved from all care, they are not required to exercise that high degree of care which the law imposes upon travelers when approaching the intersection of a highway and a railroad. The traveler upon the highway has no right to assume that the railroad is a place of safety, or that trains will not be run over it while he is attempting to pass. On the contrary, the rule has been repeatedly declared that such a crossing is a place of danger, and that the traveler must approach it with the knowledge that the company may at any time be moving trains over its road. This is the ground of the difference between the rule as to a passenger while upon station grounds and a traveler upon the highway. The one has the right to believe that the place which he is using is one of safety, while the other is bound to know that the place which he is approaching is on of imminent danger. Upon the basis of this difference the rule is now firmly

established that a passenger, before .crossing a track while taking or leaving a train, is not required, as a matter of law, to look and listen for approaching trains. He is simply required to exercise reasonable care in the light of all the circumstances existing at the time, and whether he exercises that care is a question of fact for the jury." To the same effect is the case of *Chesapeake & O. Ry. Co. v. King,* 99 Fed. 251, 40 C. C. A. 432, 49 L. R. A. 102, and *Chattanooga Ry. Co. v. Downs,* 106 Fed. 641, 45 C. C. A. 511. The principle of law announced by the above authorities is just and logical, and we have no hesitancy in holding that it is not negligence *per se* for a passenger to fail to stop, look, and listen while going to the depot of a railroad company to take passage on one of its trains scheduled to stop at the station at the very instant that he goes there.

In view of the law as stated above, let us see if the jury were properly instructed with reference to it. By the fourth instruction given for plaintiff, the jury are told that deceased had a right to assume that the train on the parallel track would not be running over six miles per hour past the depot at Boguechitto, and, further, that deceased had a right to presume that the railroad company would not run its trains over its parallel track in such a way as to subject him to unusual hazard or danger at the station; that deceased was not required to stop, look, and listen before crossing the west track; that, if the jury believed from the evidence that deceased did not stop, look, and listen, this fact alone did not make him guilty of contributory negligence if the jury believed that under the circumstances deceased did act as an ordinarily prudent man would act in guarding himself against injury. The practical effect of the fifth instruction given for plaintiff is to tell the jury that they must determine whether deceased was guilty of contributory negligence or not from the standpoint of whether. or not he was in the exercise of ordinary precaution at the

time of his death, in view of the circumstance of his situation
at the time.    The sixth instruction is practically the same.
After a most careful examination of all the instructions for
plaintiff, we can find no error in any of them in so far as they
relate to the application of the law to the facts of this case
as bearing upon the question of negligence.    The instructions
are drawn with much care and skill.    The instructions are a
literal application of the law to the facts of this case, on the
question of negligence, within the well-stated rule to be found
in the case of *Terry v. Jewett,* which rule we can do no better
than to restate here.    Thus it is said in the *Terry v. Jewett
case, supra:* "There is a difference between the care and cau-
tion demanded in crossing a railroad track on a highway and
in crossing at a depot of a railroad company to reach the cars.
No absolute rule can be laid down to govern the passenger in
the latter case under all circumstances.    While a passenger
has a right to pass from the depot to the train on which such
passenger intends to travel, and the company should furnish
reasonable and adequate protection against accident in the en-
joyment of this privilege, the passenger is bound to exercise
proper care, prudence, and caution in avoiding danger.    The
degree of care and caution must be governed in all cases by
the extent of the peril to be encountered and the circumstances
attending the exposure."

In view of what we have said above, we do not deem it
necessary to pursue the refused instruction of defendant at any
great length.    It was not error on the part of the court, under
the facts of the case, to refuse instruction No. 6 asked for by
defendant.    It embodied the stop, look, and listen doctrine,
which had been pressed to its fullest limit in instruction No.
14, given for defendant.    If instruction No. 6 had simply
told the jury that if they believed from the evidence that de-
ceased was warned not to go upon the parallel track when he

was killed because of the approaching freight train, and the danger incident thereto, and that he understood, or ought to have understood, and refused to heed that warning, he was guilty of contributory negligence, it would have been improper to refuse it; but the instruction makes the contributory negligence depend upon whether or not deceased stopped, looked, and listened before going upon the track without reference to anything else, and such is not the law. Counsel for appellant cite the case of *Railroad Company v. Crockett*, 78 Miss. 407, 29 South. 162, in support of the contention that deceased was guilty of contributory negligence, but the facts of that case make a very different case from the one now on trial. In the *Crockett case* it was shown that the party injured was a lad fourteen years of age. There was a freight train approaching a switch which train he saw and knew to be approaching; yet, with this knowledge, he walked upon the side track in front of the train and was injured. In a suit subsequently instituted against the railroad for the injury, it was attempted to be shown in justification of the act that it was the custom of the train to stop at this switch before entering the same, but the court held that the boy was guilty of contributory negligence under the facts above stated. It was not shown in the above case that there was a depot at the place where the boy was injured; it was not shown that there was a passenger train then due at that point on which the injured party intended to take passage; it is not shown that the train by which he was injured was running at an unlawful rate of speed—and all these things do appear in the case now under consideration. The case on trial is not at all similar in its facts to the *Crockett case, supra.* Again, counsel for appellant argue that because deceased did not stop, look, and listen he was guilty of contributory negligence under the rule announced in the cases of *Murdock v. Railroad Co.*, 77 Miss. 487, 29 South. 25, and

*Jackson v. Railroad Co.,* 89 Miss. 32, 42 South. 236, but we have shown that the rule declared by the two above cases has no application to the case now before the court. Thus in the *Murdock case,* 77 Miss. 487, 29 South. 25, the injured party was engaged in passing through an open railroad yard on some business of his own, and undertook to pass between two cars of a standing freight train already coupled together, and while an engine was approaching for the purpose of moving the train, and while so doing was injured by reason of the fact that nine other cars had been rapidly and violently pushed against the cars that the injured party was attempting to pass over, and the court held that the injured party was guilty of contributory negligence. The *Jackson case,* 89 Miss. 32, 42 South. 236, falls within the ordinary railroad crossing cases, and, as we have seen, has no application here. Under the facts as shown by the declaration, one Jackson was driving home on a public highway which crossed the railroad track, and, without stopping, looking, or listening, went upon the railroad, and was killed by a passing train. It was shown that the track was perfectly straight for a mile and a half in the direction from which the train was coming, and that Jackson had an unobstructed view for about that distance. Had he stopped, looked, or listened, the accident would not have happened, and the court held, under the facts there under consideration, that it was Jackson's duty to do one of the three things. Had Jackson stopped, the train would have passed harmlessly by; had he looked, he must have seen; had he listened, he must have heard.

If it be conceded that minor error was committed in the giving of the first instruction for plaintiff, the error is not sufficiently grave to warrant a reversal. The amount of the judgment is amply supported by the evidence, and, indeed, had the jury returned a larger verdict, it would not have been disturbed on the fact of this case.      *Affirmed.*

Whitfield, C. J., delivered the following dissenting opinion:

The fourth instruction given for the plaintiff is in the following words:

"The court instructs the jury for the plaintiff that the plaintiff's husband had a right to presume that the freight train, if he had known it was coming, would not be running over six miles per hour, and that it would not run past the depot at Boguechitto on this occasion at a greater rate of speed than six miles per hour; and, further, that he had a right to presume that the defendant company would not by the running of its trains upon its parallel track subject him to unusual hazard or danger at said station, and the law did not require him to stop, look, and listen before crossing said west track, and, if he did not stop, look, and listen, he would not have been guilty of contributory negligence because of such failure alone. The question of fact to be determined by the jury, on the subject of contributory negligence, is: Did the deceased, under the circumstances, in view of the presumptions above enumerated, act as an ordinarily prudent man would act in guarding himself against injury?"

The plain effect of this instruction was to charge the jury that, although the plaintiff might have known the train was coming, yet, because he was entitled under the law to assume that the train would not run in the town and past the depot at a speed more than six miles an hour, therefore he could neglect to stop, or look, or listen, and yet this failure to do one or all of these things would not alone constitute contributory negligence. There is no possible escape from the conclusion that this is the plain meaning of the plain language of this instruction. This is not the law. Running more than six miles an hour through an incorporated town does not of itself alone entitle the plaintiff to recover in a case where only actual damages are sought, as here, but it must appear that such excessive speed was the proximate cause of the injury. This charge posi-

tively declares, as an absolute and universal rule of law, that merely because the plaintiff has the right abstractly and generally to presume that a train will not run at a speed of more than six miles an hour through an incorporated town and past the depot thereof, therefore this presumption alone in all cases relieves the plaintiff from using the faculties of sight and hearing with which nature has endowed him by completely ignoring the reciprocal duties of the plaintiff and the defendant at the time and place of the injury. It is fundamentally erroneous, goes to the heart of the case, and should cause a reversal.

The sixth charge, refused to the defendant, is in the following words:

"The court instructs the jury for the defendant that although they may believe the defendant was negligent in running two trains through the municipality of Boguechitto so that they passed each other at the same time at the crossing at which deceased met his death, and although they may believe that the freight train was running at an unlawful rate of speed, and that its bell and whistle were not giving the proper signals, still it was incumbent upon the deceased to stop, look, or listen before going upon the tracks of the defendant, and, if he failed to do this and went upon the tracks after being told not to do so, defendant's negligence will not entitle the plaintiffs to recover, but they will find a verdict for the defendant."

The witness Sauls had testified that he had accosted deceased, seized him by the arm, told him to look out, and warned him of the approaching train. The deceased tore away from him, saying "Oh," and rushed on. It is true that the plaintiff introduced a witness to show that Sauls was not present at the scene of the accident at all, but it is also true that another witness for the defendant supported Sauls' statement that he was there, and the defendant was manifestly entitled to have its theory of the case, as bottomed on this testimony of Sauls, put to the jury on this instruction, and it was error, and fatal error, to refuse this instruction.

I have examined with great care every one of the authorities cited by learned counsel for appellee, many of which are referred to in the opinion in chief, laying down the doctrine which it is admitted is an exception to the general rule that wherever the relationship of passenger is established between one and a railroad company, and such passenger is endeavoring to reach his train, and embark thereon, or to debark therefrom at the arrival at a depot, there is no absolute rule of law that such passenger shall stop, or look, or listen. I will quote a few of the very cases cited by learnel counsel, and from these citations the true rule on this subject will clearly appear. For example, in the case of *Louisville, etc., R. R. Co. v. Crominarity,* 86 Miss. 464, 38 South. 633; "Many decisions and a multitude of authorities are cited to show that other courts have held that the mere failure to stop before driving on a railroad crossing constituted, as a matter of law, such negligence as forbids recovery for any injury inflicted by a passing train. We decline to adopt any such rigid rule. What constitutes negligence must depend always upon the surrounding conditions and the attendant circumstances of the particular instance. No hard and fast rule of action can be prescribed which will make the same course of conduct under any and all circumstances either wise or unwise, cautious or reckless. The true rule is that it is incumbent on the traveler to use that degree of care and caution which is rendered necessary by a reasonable regard for his safety under the peculiar circumstances and conditions by which he is at the time confronted. It is the duty of a traveler in approaching a crossing to use all reasonable precaution to apprise himself of the approach of a train, but whether that reasonable precaution will demand that he shall stop and look and listen, or whether any lesser degree of care on his part will be sufficient, must generally, though not invariably, be a question of fact; and, being a question of fact, it should be submitted to the jury under proper instructions for their decision." In the case of *Warner v. B. & O. R. R. Co.,*

168 U. S. 339, 18 Sup. Ct. 68, 42 L. Ed. 491, the court expressly stated that: "The implied invitation to such passenger does not absolve him from the duty of exercising care and caution in avoiding danger; that is to say, from using the senses of sight and hearing." In the case of *Chicago, M. & St. P. R. R. Co. v. Lowell,* 151 U. S. 209, 14 Sup. Ct. 281, 38 L. Ed. 131, it is said: "A passenger in crossing a railroad track parallel with the one on which his train has arrived at a station, who does not look or listen for the train on the parallel track, is not *per se* guilty of contributory negligence, but it is a question for the jury." And the same doctrine is held in *Graven v. MacLeod,* 92 Fed. 846, 35 C. C. A. 47. In *V. & M. R. R. Co. v. McGowan,* 62 Miss. 682, 52 Am. Rep. 205, it is said: "It is not contributory negligence *per se* to be on a railroad track at a place where a person has no right to be. One may be guilty of contributory negligence at a crossing or where he has a right to be. The criterion is whether he observes due care, under the circumstances of his situation, whatever it may be, to avoid harm from the act complained of. He is not to be pronounced guilty of contributory negligence merely for being on the railroad, where he should not be, but inquiry is to be made as to the time, place, and circumstances, and as to his conduct in view of the negligence complained of, in order to determine whether he was wanting in that care the absence of which constitutes contributory negligence preventing recovery. What is reasonable care in any case depends upon the particular circumstances of that case."

In the case of *A., T. & S. F. R. R. Co. v. Shean,* 18 Colo. 368, 33 Pac. 108, 20 L. R. A. 729, the court expressly says: "Under all the facts shown in evidence and the circumstances surrounding the accident, whether the person injured was guilty of contributory negligence at the time is a question within the province of the jury to decide, and one that the court cannot rightfully take from them." In the case of *Terry v. Jew-*

*ett,* cited in the opinion in chief, it is distinctly stated: "No absolute rule can be laid down to govern the passenger in the latter case (that is, whilst crossing the track to take his train) under all circumstances. While a passenger has a right to pass from the depot to the train on which such passenger intends to travel, and the company should furnish reasonable and adequate protection against accident in the enjoyment of this privilege, the passenger is bound to exercise proper care, prudence, and caution in avoiding danger." In short, the sum and substance of all that is laid down in the various cases cited by learned counsel for appellee on this particular point—this exception to the general rule—is this: That whenever the relationship of passenger is established between a railroad company and any person, and that person is attempting, at the regular depot of such a company, to cross the tracks to embark on his train, or is, after arriving at said depot, attempting to debark from his train, the railroad company owes such a passenger, in such particular situation, so peculiarly circumstanced, a much higher degree of care than it would owe to one not a passenger, and consequently that it would not be proper for the court, as a mere matter of law, where nothing more was proved than that such passenger failed to stop, or look, or listen, to charge the jury that such failure was, as a mere matter of law, contributory negligence and such contributory negligence as would bar his recovery; in other words, that in such precise case, whether or not the failure of a passenger to stop or look or listen is contributory negligence is a matter which the court has no right to take from the jury. That is the precise idea. It is not as a mere matter of law contributory negligence in such a case which the court may charge the jury bars recovery, even where the injured person is a passenger. In other words, all that I understand these authorities to hold is simply that whether, in the case where a passenger is injured under circumstances such as I have set out, his

96 Miss.—22

failure to stop, or look, or listen is contributory negligence, is a matter which the court must leave to the jury, and that consequently the court itself cannot as a mere matter of law charge the jury that such failure was or was not contributory negligence. But the charges which I have criticised go far beyond this doctrine, exceptional as it is. The effect of the fourth charge, as I have pointed out, was to charge the jury that, although the deceased might have known the train was coming, yet, because he was entitled under the law to assume that the train would not run past the depot more than six miles an hour, therefore, because of this assumption that he knew this train was coming, he might, in the face of his knowledge, act on the assumption, and not be guilty of contributory negligence. Of course, the plaintiff, whether he is a passenger or not, but more especially if he be a passenger, has a right to assume in general that the defendant railroad company will comply with all the regulations which the law imposes upon it, whatever those regulations may be—as to the rate of speed, as to the safety of the depot, as to giving signals, etc. Certainly such assumptions may very properly be indulged in, and especially so by all passengers. But of what earthly pertinence is it to observe that such assumptions may be indulged by a passenger in a case in which the testimony shows, as it does here, that the injured party knew of the impending danger, knew of the approaching train and the peril to him therefrom? In the presence of knowledge of the existing conditions, assumptions as to whether they existed or not are idle. In the face of the plain fact that he was seized by the witness Sauls, and told that the train was coming and warned to "look out," and that from this testimony, if true, he was bound to have known of his danger, it is worse than idle to talk about the abstract proposition of law that he might generally assume that the railroad would comply with the regulations which the law imposed upon it. I do not know how to

make this proposition any clearer than to say that whilst it is true that a passenger has the right to assume that a depot is safe, and the railroad will so arrange its schedules as to avoid collisions and injuries; that the railroad will give such warning signals of approaching trains and observe all other regulations that the law imposes as to rate of speed, etc.; nevertheless, if the passenger actually does know, in any particular case, of the peril which threatens him, then in any such case assumptions all vanish, and the case must be tried on the knowledge that the evidence shows he had; and whether he is guilty of contributory negligence barring his recovery must depend, in all cases, where his knowledge is shown upon that knowledge, and not upon any abstract right he may have to assume generally that the railroad company will observe the regulations which the law invokes.

In this case, as I have already pointed out, the sixth charge, which was refused to defendant, was drawn with special reference to the testimony of the witness Sauls, and most indubitably the defendant company was entitled to have its theory of the case, as bottomed on this testimony, given in charge to the jury.