MARY A. WHITE

*vs.*

LEWISTON, AUGUSTA AND WATERVILLE STREET RAILWAY.

Kennebec.     Opinion December 17, 1910.

*Common Carriers. Street Railways. Relation of Passenger and Carrier. Injury to Alighting Passenger. Dangerous Condition of Street. Private and Special Laws, 1889, chapter 528, sections 3, 15. Revised Statutes, chapter 53, section 26.*

While a passenger upon a street railway car terminates the relation of passenger and carrier upon alighting from the cars when the carrier has no control over the street or place of alighting, it is otherwise where either the general law or the provisions of the carrier's charter cast upon the carrier the duty to keep in repair the portion of the street upon which the passenger alights.

Where a street railway corporation has the duty of keeping in repair that portion of the street upon which it invites passengers to alight, it may become responsible for dangerous conditions therein which it causes or permits.

A street railway corporation having the duty to keep in repair that portion of the street occupied by its tracks, is responsible for dangerous conditions of its own making existing there; and where it stopped its car at such a place, *held* that it was liable for injuries received by a passenger by reason of such dangerous condition after alighting from the car.

Where a street railway company operates an open car with transverse seats, the implied invitation upon the stopping of the car, or the implied representation as to the safety of the points upon the street opposite the seats, is not restricted to one side or the other, in the absence of warning by the company, and a passenger alighting from such car on the side of the car opposite his seat is not guilty of contributory negligence as a matter of law.

On motion and exceptions by defendant.    Overruled.

Action on the case to recover damages for personal injuries sustained by the plaintiff and caused by the alleged negligence of the defendant.    Plea, the general issue.    Verdict for plaintiff for $1941.66.    Defendant filed a general motion for a new trial and also excepted to several rulings made by the presiding Justice.

*Benedict F. Maher,* for plaintiff.

*Heath & Andrews,* for defendant.

SITTING :   SAVAGE, SPEAR, CORNISH, KING, BIRD, JJ.

The case as stated by Mr. Justice BIRD who prepared the opinion, is as follows :    The defendant, successor to the Lewiston, Winthrop & Augusta Street Railway and of the Augusta, Hallowell & Gardiner Railroad Company was on the twelfth day of August, 1907, a common carrier of passengers by its electric railway from Hallowell to Augusta and intermediate points.    On that day at about three o'clock in the afternoon the plaintiff, in good health and weighing two hundred and sixty pounds, became at Hallowell a passenger on a north bound open car of defendant of the usual type.    She occupied the westerly end of the fourth seat from the rear of the car.    Her destination being the third or most northerly gate of the Hallowell Cemetery, she gave a signal to the conductor

to stop the car when she had arrived about opposite the most southerly gate of the cemetery. The conductor, being engaged upon the opposite side of the car in taking fares, did not see her signal and, after a short interval, plaintiff called to the conductor to stop, the bell was rung and the car stopped. In the locality where the car stopped the main track was situated upon the westerly side of the wrought portion of the street which upon the easterly side of the track was macadamized and in good condition, while upon the west of the main track was a siding several hundred feet long extending southerly from Day's driveway, near which it united with the main track where its grade was coincident therewith. The driveway extends westerly from the street and northerly of the Cemetery and is about eighteen feet wide measuring on the westerly main rail. The grade of the siding gradually lowered as it extended southerly until at a distance of fifty feet or more from the southerly side of the driveway the grade of the siding was nearly fourteen inches lower than that of the main track, the surface of the street, gradually sloping from the main track to the siding, forming a shoulder. At a distance of twenty-five feet southerly of the south side of the driveway the difference in grade between the main and spur tracks is six inches and the distance between the westerly main rail and the easterly spur rail thirty-three inches. The spur track was constructed of T rails supported by sleepers which between the rails and westerly of the rails projected above the surface of the street, but their ends, easterly of the easterly rail were covered with earth except that some of those about twenty-five feet southerly of the driveway were exposed in the neighborhood of the rail. The running board of the car overhung or extended out from the westerly rail of the main track about twenty-two inches.

The testimony was sharply contradictory as to the place where the car stopped, that produced by plaintiff tending to show that the front of the car reached the southerly edge of the driveway, that of defendant that it nearly reached the northerly edge of the driveway where the motorman in charge usually stopped his car. If the latter is correct, the place where the plaintiff alighted was between the rails of the spur track ; if the former, she alighted between the

easterly rail of the spur track and the westerly rail of the main track about twenty-five feet southerly of the driveway. Here the spur track being seldom used, grass and weeds had grown upon on either side of its easterly rail, more or less, as plaintiff claims, obscuring it from view.

When the car stopped, plaintiff alighted from the westerly side and placed both feet upon the ground. She states that after alighting she took a step to the left to let the car go by her and her right foot caught on the easterly rail of the siding causing her to fall and sustain injuries for which she seeks damages.

BIRD, J.    The first exception is to the refusal of certain instructions requested by defendant and to certain instructions given against the objection of defendant. Recital of the instructions refused and given may be avoided by adopting the concise statement of counsel of defendant in his brief: "The gist of our contention was that if the plaintiff had safely alighted in the street, as she admitted, and her fall was due to her stumbling over anything lawfully in the street, the defendant was not liable, on the ground that its duty to the passenger ended with her safe alighting in the street. The gist of the rule given was that it was the duty of the defendant to exercise ordinary care in selecting a reasonably safe stopping place."

The rule asked for has been recognized by this court, at least arguendo, but with a limitation of its application to cases where the railway company has no authority or control over the streets in *Conway* v. *Railroad Co.*, 87 Maine, 283, 286 ; S. C. 90 Maine, 199, 202-4, see *Call* v. *Street Railway*, 69 N. H. 562, 565 ; *Creamer* v. *West End Railway*, 156 Mass. 320, 321 ; *Joslyn* v. *Milford, etc., Railway Co.*, 184 Mass. 65, 67. "In the absence of any authority given the street railway company over the streets, it must be evident that it cannot be held as an insurer of their safety for passengers to alight upon." *Conway* v. *Horse R. R. Co.*, 87 Maine, 286. In *Robertson* v. *West Jersey & S. R. Co.*, 79 N. J. L. 186, the court quoting from *Creamer* v. *Railway Co.*,

ubi supra, says "'The street is in no sense a passenger station for the safety of which a street railway company is responsible. When a passenger steps from the car upon the street, he becomes a traveller upon the highway and terminates his relations and rights as a passenger, and the railway company is not responsible to him as a carrier for the condition of the street or for his safe passage from the car to the sidewalk.' While we might qualify the statement of this case to exclude the setting down of a passenger at an obviously improper point in the highway, the rule enunciated as to the termination of the relation is approved."

But in the present case it is provided in the charter of one of the corporations whose franchises the defendant is now exercising, that "said corporation shall maintain and keep in repair such portions of the streets and roads occupied by the tracks of its railroad, and shall make all other repairs of said streets and roads which may be rendered necessary by the occupation of the same by said railroad; . . . . And said corporation shall be liable for any loss or damage which any person may sustain by reason of any carelessness, neglect or misconduct of its agents or servants, or of any obstruction placed by them in the streets or roads of said cities or towns, and shall save and hold said cities and towns harmless from any suits for such loss or damage.

"The said railroad shall be constructed and maintained in such form and manner, and with such rails and appliances, that so much of the streets and roads as are occupied thereby shall be safe and convenient for travellers; and said corporation shall be liable in an action on the case for any loss or damage which any person may sustain by reason of any failure to comply with this provision:" §§ 3 and 15 of c. 528 of Priv. and Spec. Laws, 1889.

And so by general statute, it is provided, R. S., c. 53, sec. 26, "Such corporations [all street railroad corporations] shall keep and maintain in repair such portions of the streets, roads or ways, as shall be by them occupied, and shall make all other repairs thereon, rendered necessary by such occupation" . . . .

It is unnecessary to say that having the duty both by special and general law to maintain in repair the portions of the streets occupied,

defendant had the authority and power to make necessary repairs. If grass and weeds obscured and concealed its disused rails, the removal of the same was a matter within its power and to such extent its siding was within the control of defendant. *Milton* v. *Railway Co.*, 103 Maine, 218, 222, 223.

Having control, if not exclusive, of the point where the passenger is impliedly invited to alight, it is responsible for dangerous conditions of its own making. The condition which the jury may have found to exist at the point at which plaintiff claims to have alighted is not unlike that which existed in *Cobb* v. *Standish*, 14 Maine, 198. The rail lawfully located had become "a pitfall to allure and then to injure." See *Bourget* v. *Cambridge*, 156 Mass. 391, 393.

The refusal of the requested instructions without exception or modification in the present case was not error. The instructions given and excepted to were in accordance with the law as laid down in *Conway* v. *Railroad Co.*, 90 Maine, 199, 204.

The second and third exceptions, as matter of law, are abandoned and so far as the second concerns matter of fact it is urged and considered upon the motion.

Upon its motion, defendant urges that the jury erred in finding that the plaintiff alighted at a place about twenty-five feet southerly of the driveway. But assuming the credibility of all the witnesses, the evidence upon this point was conflicting and we can find no cause to hold that the conclusion of the jury was without warrant.

Again the defendant contends that the plaintiff was guilty of contributory negligence in not alighting from the east side of the car. But "the plaintiff was sitting at the end of one of the transverse seats . . . . and would be expected to alight, as she did from the side of the car at the point opposite her seat." *Conway* v. *Railroad Co.*, 90 Maine, 199, 203. We cannot hold that with an open car with transverse seats the invitation to alight implied from the stopping of the car or the implied representation as to the safety of the points upon the street opposite the seats where the car stops is restricted to one side or the other in the absence of warning on part of defendant. See *McKimble* v. *B. & M. R. R.*, 141 Mass. 463, 471; *Richmond City Ry. Co.* v. *Scott*, 86 Va. 902,

908.   Whether the plaintiff was guilty of contributory negligence in selecting the west side from which to alight, was a question for the jury, and its finding upon the evidence, we find no occasion to disturb.

Contributory negligence is also urged in that the plaintiff was careless in stumbling over the rail and in not seeing and avoiding it.    But upon both these questions the evidence was conflicting. The jury had a view of the locality and we must hold that it is not apparent that the verdict is indisputably wrong.

*Exceptions and motion overruled.*