A. W. DUNN, ADMR., v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 10 October, 1917.)

1. **Carriers of Passengers — Railroads — Negligence — Depots—Evidence—Trials.**

     Upon evidence tending to show that the plaintiff's intestate was a passenger on defendant's train arriving at his destination after dark; that this train, unlike other passenger trains, stopped for its passengers to get off on a level with several other tracks between buildings on each side, and that plaintiff, to reach his hotel, had to go around the coaches on his train, and that the engine thereof, having detached itself from this train, ran upon and killed plaintiff's intestate after he had gone around the coaches and was upon a parallel track; that the engine was backing in excess of the speed ordinance of the town, without signal or warning or a proper lookout to warn the intestate, and that the place where the injury occurred was insufficiently lighted: *Held,* sufficient upon the issue of defendant's actionable negligence.

2. **Railroads — Carriers of Passengers — Ordinances—Speed Limits—Negligence—Nonsuit—Trials.**

     . The running of a train within a town at a speed in excess of that allowed by law is negligence *per se,* and not merely evidence thereof; and

where the intestate of plaintiff has been killed by the train while violating such ordinance, a judgment of nonsuit depending upon the absence of defendant's negligence alone, will be denied.

3. **Carriers of Passengers — Railroads—Negligence—Warnings—"Look and Listen"—Trespassers—Instructions.**

Where the evidence tends to show that plaintiff's intestate was run upon and killed by a locomotive on defendant's parallel track, while leaving the train in the usual way, upon which he had been a passenger, a charge of the court which imposes upon him an equal duty to look and listen before entering upon the track as that of the defendant to give proper signals and warnings, etc., is erroneous as to the plaintiff, but one of which the defendant cannot complain, as greater care is required of it than that of a trespasser or licensee. And the charge in this case is held to be further objectionable, as it eliminated from the consideration of the jury the evidence that the intestate was deaf, and the further circumstances tending to show that by defendant's negligence he would not have perceived the danger had he previously looked and listened.

4. **Negligence—Proximate Cause.**

Proximate cause does not relate merely to time and space, but is defined to be the natural and continuous sequence of events, unbroken by any new and independent cause, producing the event, and without which it would not have occurred.

5. **Same—Evidence—Instructions.**

Evidence tending to show that defendant's locomotive ran upon and killed plaintiff's intestate while it was exceeding the speed permitted by the town ordinance, and that otherwise the intestate would have reached a place of safety beyond the track, is sufficient upon the question of proximate cause, and under the circumstances of this case: *Held*, the charge of the court did not prejudice defendant in this regard.

CIVIL ACTION, tried before *O. H. Allen, J.*, at June Term, 1917, of HALIFAX.

This is an action to recover damages for the killing of the intestate of the plaintiff, caused, as the plaintiff alleges, by the negligence of the defendant, in that he was run over by a train of the defendant which was backing in the night-time without a light or an employee on the rear of the car; that no bell was ringing, and that the train was running in excess of four miles an hour, in violation of an ordinance of Weldon.

The defendant denies negligence, and pleads contributory negligence of the plaintiff's intestate.

The evidence of the plaintiff tends to prove:

On the night of the first of February, 1916, A. L. Artz, of Somerville, Mass., an inspector of the Lumber Mutual Fire Insurance Company, came to Weldon, N. C., to inspect a loss in a lumber plant; that he came on the train of the defendant company which should have arrived at 8:25 p. m., but actually did not reach Weldon until about 8:40 p. m.; that the night was dark and rainy; that this train, designated as No. 72,

upon reaching its destination at Weldon, does not run on the elevated tracks of the Atlantic Coast Line to the union station and discharge its passengers under shelter, who then by stairway reach the street line, but just south of the town it switches from the main line to the tracks of a lower level and runs to the place where the old shed used to be, between First and Second Streets of the said town, and on the same grade with the streets; that .at the place where the train stops and discharges its passengers the defendant maintains six tracks, and on each side of said tracks there are two-story buildings, and the line of the buildings are only a short distance from the outer track on each side; that there are no lights at night about or near said tracks, except from the windows of the buildings and a street light above the crossing at First Street; that the main street of the town, Washington Avenue, strikes these tracks diagonally on their east side, just north of the building of the Weldon Bank and Trust Company, which is a building of triangular shape; that the Western Union telegraph office is on the west side of said tracks; that First Street is just north of the Western Union Telegraph Company's office and the bank building, and separates these points from the union station of the railroad companies; that passengers alighting from this train do so in an open yard, covered by these railroad tracks, where there are neither platform nor lights, except as above stated, and on the night in question, about the station and on the streets the mud was about ankle deep; that to reach First Street to go to the hotel a passenger had to proceed north and go around the office of the Western Union Telegraph Company, and to reach the main or business street of the town a passenger had to proceed north and go around the Weldon Bank and Trust Company building; that if he alighted on the west side of the train, to get into the main street he would be compelled to go around the front of the train, and if he alighted on the east side of the train, to go to the hotel he would be compelled to do the same thing; that on the night of the alleged injury Mr. Artz left the train on its west side, and desiring to go to the main street, was coming from somewhere about the second track directly to the point about the bank building; that the place was much frequented by the public; that when the train stops, the engine is detached and proceeds along the track on which it came, until a switch is reached, when it changes to the next track and runs back alongside the cars which it brought in, and which had remained where the train first stopped; that the switch is seven rails length, or 210 feet, from where his engine first stopped; that just as Mr. Artz was crossing in front of the end of the train, this engine backed over him and so injured him that he died in a few hours; that the train was backing; that there was no light on the advancing end of the locomotive, nor was

the bell ringing, and that the engine was running more than four miles an hour, in violation of an ordinance of the town.

The evidence of the defendant tends to prove that there was an arc light within 50 or 60 feet of the place where the intestate of the plaintiff was killed, and that one could easily see the approaching train; that there was a light and an employee of the defendant on the rear of the approaching train, and that the bell was ringing; that the train was not running in excess of four miles an hour; that the employee on the rear of the train called to the intestate of the plaintiff when he saw him approaching the track, and when he saw that he did not stop he gave the wash-out signal, and that the train was then stopped within three or four feet.

There was a motion for judgment of nonsuit, which was overruled, and the defendant excepted.

His Honor charged the jury, among other things, as follows:

"If the jury should find from the evidence that the plaintiff was walking on the railroad track, and the defendant was backing its engine along the track, in the night-time, in the direction of the plaintiff, and that there was no light at the time on the back part of the engine, and no agent there to keep a lookout along the track, or if, being there, he failed to exercise reasonable care in looking ahead along the track for any person on or near the track, and that no bell was ringing; and if the jury should find that the engine so moving ran against and upon the intestate and killed him; and if the jury should find that if the bell had been ringing and there had been a proper lookout on the engine, the intestate would have had proper notice of the approaching train in time and would have escaped the train, or if there had been a person stationed on the engine, and was exercising reasonable care in looking along the track, he would have observed the intestate in time to avoid striking him, then the jury should answer the first issue 'Yes,' and the second issue 'No.'

"That is all bearing upon the question as to whether the bell was ringing, and whether there was any one stationed to keep a lookout; in other words, whether they were using these proper precautions to prevent injury to persons who might be crossing. It was as much the duty of the deceased, Mr. Artz, to look and listen for approaching trains at the crossing as it was the duty of the railroad to give its signals; and so, if by reasonable care in looking and listening, the deceased could have seen or heard the approaching engine and have avoided the accident or injury, it was his duty to have done so; and if he was run over and killed because of the failure to look and listen, the defendant company would not be liable, and in that event you would answer the second

17—174

issue 'Yes,' that is, on the question of contributory negligence- the negligence of the deceased.

"(That is given subject to this further charge that if the jury should find that the engine was being run at a greater rate of speed than four miles an hour, this would be a violation of the ordinance of the town, and is negligence *per se;* and if the jury should find that this was the proximate cause of the injury—that is to say, that if the jury should find that it was running at a greater rate of speed, and that that was the proximate cause of the injury—then you should answer the first issue 'Yes' and the second issue 'No.' ")

To so much of the foregoing instructions as appears in parentheses the defendant excepted.

The jury returned the following verdict:

1. Was the intestate of the plaintiff injured and killed by the negligence of the defendant, as alleged in the complaint? Answer: Yes.

2. Did the intestate of the plaintiff by his own negligence contribute to his injury, as alleged in the complaint? Answer: No.

3. Notwithstanding the negligence of the intestate of the plaintiff, could the defendant by the exercise of ordinary care have avoided the injury?

4. What amount of damages, if any, is the plaintiff entitled to recover? Answer: $15,000.

His Honor reduced the damages to $12,000, and rendered judgment for that amount, and the defendant appealed.

*Walter E. Daniel and George C. Green for plaintiff.*

*F. S. Spruill, R. C. Dunn, W. A. Townes, and Carl H. Davis for defendant.*

ALLEN, J. The evidence for the plaintiff, which has been accepted, establishes the negligence of the defendant as the proximate cause of the death of the plaintiff's intestate. *Purnell v. R. R.,* 122 N. C., 832; *Ray v. R. R.,* 141 N. C., 84; *Hill v. R. R.,* 166 N. C., 596.

The question has been recently discussed in a number of cases.

The Court says, in *Ray v. R. R.:* "It was a negligent act to back a train onto a railroad yard where persons, passengers and others were accustomed to stand or move about, either as of right or in the discharge of some duty, or by permission of the company, evidenced by established usage, without warning of any kind and without having some one in a position to observe the condition of the track and signal the engineer or caution others in case of impending peril." And in *Hill v. R. R.,* quoting from *Lloyd v. R. R.,* 118 N. C., 1010: "It was negligence on the part of the defendant to run its engine, after night, rear in front, without such

a light, for two reasons—first, because by its aid the intestate might possibly have been seen in time to stop the train and avert the accident; and, secondly, because every person who used the track as a footway, under the implied license of the defendant, had reasonable ground to expect that such care would be exercised and to feel secure in acting upon that supposition."

It is also settled in this State that the violation of an ordinance or statute is negligence, and not mere evidence of negligence. *Ledbetter v. English,* 166 N. C., 125; *McNeill v. R. R.,* 167 N. C., 396.

The judgment of nonsuit could not, therefore, be granted except on the ground of contributory negligence, in that the intestate of the plaintiff entered on the track without looking and listening, and this could not be declared as matter of law, as will appear in the discussion of the charge relating to the second issue.

The only debatable question raised by the appeal is as to the charge on contributory negligence.

The first part of this charge was too favorable to the defendant, because it deals with the intestate as a stranger on the premises by permission, and not as a passenger leaving the premises of the defendant after alighting from its train.

In *Warner v. R. R.,* 168 U. S., 339, the Court said: "The duty owing by a railroad company to a passenger actually or constructively in its care is of such a character that the rules of law regulating the conduct of a traveler upon the highway when about to cross, and the trespasser who ventures upon the tracks of a railroad company, are not a proper criterion by which to determine whether or not a passenger who sustains injury in going upon the tracks of the railroad was guilty of contributory negligence. A railroad company owes to one standing towards it in the relation of a passenger a different and higher degree of care from that which is due to mere trespassers or strangers, and it is conversely equally true that the passenger, under given conditions, had a right to rely upon the exercise by the road of care; and the question of whether or not he is negligent, under all circumstances, must be determined on due consideration of the obligations of both the company and the passengers:"

The cases bearing on the question are collected in the note to *Besecker v. R. R.,* 14 Anno. Cases, 24, from which we quote the following: "The duty of a railroad to a passenger is of such a character that the rules of law regulating the conduct of a traveler upon the highway when about to cross railroad tracks and of a trespasser who ventures upon such tracks are not proper *criteria* by which to determine whether a passenger who sustains injury in going upon the tracks for the purpose

of passing between a train and a station in the manner designated by the railroad company is guilty of contributory negligence.

"The failure of a passenger to look or listen, under such circumstances, may or may not be negligence, according to the peculiar facts of the case. *Chesapeake, etc., R. Co. v. King,* 99 Fed., 251; 40 C. C. A., 432; 49 L. R. A., 102. But the mere fact of crossing a track upon the implied invitation of the company, for the purpose of boarding or leaving a train, without looking or listening, is not necessarily contributory negligence as a matter of law."

The charge was also objectionable on the part of the plaintiff, because it ignored the evidence tending to prove that the intestate of the plaintiff was deaf; that there was neither man nor light on the rear of the train; that the electric light did not aid him; that it was dark where he was, and that if he had looked and listened he would not have seen nor heard anything that would have afforded him protection.

The Court says, in *Russell v. R. R.,* 118 N. C., 1109: "Where the plaintiff exposes himself to danger,· if he is induced to incur the risk because of the failure to sound the whistle or ring the bell at the usual place, the omission to listen and look is deemed excusable, or not culpable, because he is misled by the conduct of the company. *Alexander v. R. R.,* 112 N. C., 734."

Did the modification of this charge by the part excepted to deprive the defendant of its defense of contributory negligence, and was it prejudicial to the defendant?

When the two paragraphs of the charge are considered together, they amount to an instruction that, although the defendant did not look and listen before entering on the track, yet, if the defendant was running its train in excess of four miles an hour, in violation of the ordinance, and this was the proximate cause of his death, the jury should answer the second issue "No."

This charge cannot be properly interpreted without determining the meaning of proximate cause and incorporating it into the charge.

Proximity of time and space is no part of the definition, and it "must be understood to be that which, in natural and continuous sequence, unbroken by any new or independent cause, produces that event, and without which such event would not have occurred." Sherman and Redfield on Negligence, sec. 26; *Hardy v. R. R.,* 160 N. C., 119; *Ward v. R. R.,* 161 N. C., 184.

The charge, therefore, considered in the light of the accepted definition of proximate cause, is equivalent to saying to the jury that, although the plaintiff did not look and listen before entering upon the track, yet, if the defendant was running its train in excess of four miles an hour, in violation of the ordinance, and that if the defendant had not been

running its train at that speed, that the plaintiff's intestate would not have been killed, that then the plaintiff would not be guilty of negligence, which was the proximate cause of his death; and if the jury so found, they should answer the issue "No," and as thus understood, there was no error in the charge.

Was there evidence supporting such a finding by the jury?

One witness for the plaintiff, who was shown to be an expert, testified that upon certain findings by the jury, of which there was evidence, that the train was running from six to eight miles an hour. The engineer of the defendant testified that the train was running about four miles an hour, and that when he received the wash-out signal, which was before the plaintiff was struck, that he stopped the train within three or four feet.

There was also evidence that the body of the plaintiff was dragged, after it was struck, 15 feet.

This furnishes some evidence that the train was running in excess of the speed limit, and if so, the jury might well have found that if it had been running at four miles an hour, that the plaintiff's intestate would have passed over the track, a distance of 3 or 4 feet, before the train reached him, and would therefore have escaped injury, and that the rate of speed was the cause, without which the injury would not have happened.

We are therefore of opinion that there was no error in the charge.

No error.

HOKE, J., concurs in result.